[No. E034552. Fourth Dist., Div. Two. Mar. 11, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
MIGUEL JAUREGUI GARCIA, Defendant and Appellant.

560

**COUNSEL**

Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Elizabeth S. Voorhies, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

McKINSTER, Acting P. J.— ■ In this case we hold that district attorneys are not independently empowered to initiate civil commitment proceedings under Penal Code section 2970,[1] part of the Mentally Disordered Offender Act (hereafter MDO Act; § 2960 et seq.). Instead, district attorneys may only initiate such proceedings when the director of the facility or program providing the prisoner's treatment, or the Director of Corrections, states in a written evaluation in accordance with section 2970 that the prisoner's severe mental disorder is not in remission, or cannot be kept in remission without treatment.

The director of the facility providing defendant's treatment recommended in writing that civil commitment proceedings under section 2970 not be pursued because the treating staff concluded defendant's severe mental disorder was in remission. Therefore, the district attorney in this case lacked statutory authority to file a petition and initiate involuntary civil commitment under section 2970 of the MDO Act. The trial court, in turn, lacked jurisdiction to proceed on that petition and, therefore, should have granted defendant's motion to dismiss. Accordingly, we will reverse the civil commitment order and direct the trial court to dismiss the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1993 a trial court sentenced defendant to serve 14 years in state prison after a jury convicted him of two charges—kidnapping a minor for the purpose of committing a lewd act (§ 207, subd. (b)) and committing a lewd act on a child under the age of 14 (§ 288, subd. (a)). In May 2000 the Department of Mental Health (hereafter the Department) determined that defendant suffered from a severe mental disorder (schizoaffective disorder, depressed type) and he was admitted under section 2962 to Atascadero State Hospital (hereafter ASH) for involuntary treatment as a condition of parole. With defendant's parole term set to expire in May 2003, the medical director of ASH, on behalf of the Department, sent a letter to the District Attorney of Riverside County in October 2002 stating that defendant had been evaluated by the ASH treatment staff and the staff had decided "not to recommend a civil commitment of involuntary treatment [under] Section 2970." As set out in the assessment and evaluation attached to the director's letter, defendant's severe mental disorder was in remission and could be kept in remission

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

without treatment with the result that defendant did not pose a substantial danger of physical harm to others.

Despite the Department's recommendation and the staff's evaluation that defendant's severe mental disorder was in remission and he was no longer a danger of physical harm to others, the district attorney filed a petition under section 2970 for continued involuntary treatment of defendant as a mentally disordered offender. Defendant moved to dismiss that petition, asserting that the district attorney lacked statutory authority to initiate involuntary commitment proceedings in the absence of a recommendation by and supporting evaluations from the Department. Defendant argued that under section 2968, the Director of Mental Health was required to notify the Board of Prison Terms that defendant's severe mental disorder is in remission and can be kept in remission. Defendant asserted that the Department should not have sent a letter to the district attorney because the district attorney had no authority to initiate a civil commitment proceeding without a written statement from the Department setting out that defendant's severe mental disorder was not in remission or could not be kept in remission without treatment. The trial court disagreed and denied defendant's motion to dismiss.

As a result, a trial on the MDO petition took place in October 2003. At that trial, Dr. Veronica Thomas, a forensic clinical psychologist appointed by the trial court at the district attorney's request, testified that in her opinion defendant suffered from pedophilia, nonexclusive type; that pedophilia is a severe mental disorder; and that defendant's pedophilia was not in remission. The jury found defendant was a mentally disordered offender within the meaning of sections 2970 and 2972. The trial court ordered defendant recommitted to ASH for a period of one year, purportedly in accordance with section 2972, subdivision (c).

## DISCUSSION

■ The MDO Act establishes a comprehensive scheme for treating prisoners who have severe mental disorders that were a cause or aggravating factor in the commission of the crime for which they were imprisoned. (See § 2960.) The act addresses treatment in three contexts—first, as a condition of parole (§ 2962); then, as continued treatment for one year upon termination of parole (§ 2970); and finally, as an additional year of treatment after expiration of the original, or previous, one-year commitment (§ 2972).

In the first context set out in section 2962 of the MDO Act, the Department must provide inpatient treatment[2] to a prisoner as a condition of parole if: (1) the prisoner has a severe mental disorder; (2) the prisoner used force or violence in committing the underlying offense; (3) the prisoner had a disorder which caused or was an aggravating factor in committing the offense; (4) the disorder is not in remission or capable of being kept in remission in the absence of treatment; (5) the prisoner was treated for the disorder for at least 90 days in the year before being paroled; and (6) because of the disorder the prisoner poses a serious threat of physical harm to other people. (§ 2962; *People v. Sheek* (2004) 122 Cal.App.4th 1606, 1610 [19 Cal.Rptr.3d 737].)

The procedure for initiating treatment of a prisoner as a condition of parole is set out in section 2962, subdivision (d)(1). That section requires, before release on parole, that the person in charge of treating the prisoner and a practicing psychiatrist or psychologist from the State Department of Mental Health evaluate the prisoner and that a chief psychiatrist of the Department of Corrections certify the six factors set out above to the Board of Prison Terms based on those evaluations. A prisoner may request a hearing before the Board of Prison Terms at which the person or agency that certified the prisoner has the burden of proving the prisoner meets the criteria for treatment in section 2962. (§ 2966, subd. (a).) A prisoner who disagrees with the Board of Prison Terms determination may file a petition in superior court requesting a hearing on whether the criteria for treatment have been met. (§ 2966, subd. (b).)

If, during the period of parole, the prisoner's severe mental disorder is put into and can be kept in remission, the Director of Mental Health must notify the Board of Prison Terms and the Department "shall discontinue treating the parolee." (§ 2968.) If the prisoner's severe mental disorder is not in remission or cannot be kept in remission without treatment, then within 180 days before termination of parole, "the medical director of the state hospital which is treating the parolee, or the community program director in charge of the parolee's outpatient program, or the Director of Corrections, shall submit to the district attorney of the county in which the parolee is receiving outpatient treatment, or for those in prison or in a state mental hospital, the district attorney of the county of commitment, his or her written evaluation on remission. If requested by the district attorney, the written evaluation shall be accompanied by supporting affidavits. [¶] The district

---

[2] Outpatient treatment is appropriate only if the Department "certifies to the Board of Prison Terms that there is reasonable cause to believe the parolee can be safely and effectively treated on an outpatient basis." (§ 2964, subd. (a).)

attorney may then file a petition with the superior court for continued involuntary treatment for one year." (§ 2970.)

In this case, defendant's treatment as a mentally disordered offender was initiated as a condition of his parole and occurred during the three-year parole period. Before his period of parole expired, the staff at ASH determined that defendant's severe mental disorder was in remission. Because defendant was put in remission during that parole period, the medical director of ASH should have notified the Board of Prison Terms that defendant was in remission and could be kept in remission as a result of treatment. (§ 2968.) Instead, as previously noted, the medical director sent a letter to the district attorney stating that defendant's severe mental disorder was in remission and advising that the Department was not requesting MDO commitment. The medical director's letter to the district attorney would have been appropriate if defendant had already been committed under section 2970 to involuntary treatment for a period of one year after his parole had terminated. Because defendant's treatment occurred during the period of his parole, the hospital director, on behalf of the Department, should have notified the Board of Prison Terms that defendant's treatment had terminated because he was in remission and could be kept in remission. (§ 2968.)[3]

The district attorney only has authority under the MDO statute to file a petition to extend a prisoner's commitment. Specifically, when a prisoner was treated during parole, the period of parole terminated without the prisoner being put into remission, and the prisoner was committed under section 2970 to involuntary treatment, then under section 2972, subdivision (e) the district attorney may file a petition for recommitment.[4] When, as in this case, a prisoner is put into, and can be kept in, remission as a result of treatment that occurs during the period of parole, the MDO Act specifies in section 2968 that treatment shall stop and the Board of Prison Terms shall be notified.

The error in this case is not a mere procedural defect, as the Attorney General urges. Nor can we rely on *People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888 [119 Cal.Rptr.2d 1, 44 P.3d 949] (*Ghilotti*) to construe the petition as a challenge to the conclusions that defendant's severe mental disorder was in remission. In *Ghilotti*, the Supreme Court held that the

---

[3] Although not specified in the statute, we assume that defendant would then have been released from ASH since he had completed his term of imprisonment.

[4] Section 2972, subdivision (e) states, "Prior to the termination of a commitment *under this section*, a petition for recommitment may be filed to determine whether the patient's severe mental disorder is not in remission or cannot be kept in remission without treatment, and whether by reason of his or her severe mental disorder, the patient represents a substantial danger of physical harm to others. The recommitment proceeding shall be conducted in accordance with the provisions of this section." (§ 2972, subd. (e), italics added.)

district attorney does not have authority under the Sexually Violent Predator Act, section 6600 et seq., to file a petition for commitment or recommitment under that act unless two evaluators appointed in accordance with section 6601, subdivision (d) or (e) concur that the defendant meets the criteria for commitment. (*Ghilotti*, at p. 909.) The evaluators in *Ghilotti* concluded that the defendant did not meet the statutory commitment criteria, but the Director of the Department of Mental Health disagreed with their evaluations and was of the opinion that their conclusions were legally incorrect because the evaluators had not applied the correct criteria. At the written request of the Director, the district attorney filed a recommitment petition effectively raising legal challenges to the evaluators' conclusions that the defendant did not meet the criteria for commitment or recommitment. (*Ghilotti*, at p. 912.) The Supreme Court held that the Director could seek commitment or recommitment even though the evaluators found that the defendant did not meet the statutory criteria: "[W]hen the Director (1) receives one or more formal evaluations that recommend against commitment or recommitment, (2) disagrees with those recommendations, (3) believes they may be infected with material legal error, and (4) does not choose, or is not permitted within the statutory scheme, to seek additional evaluations, he may nonetheless forward a request that an SVPA commitment or recommitment petition be filed, and the county's attorney may submit such a petition for filing, with copies of the evaluators' reports attached. [Citation.] The person named in the petition may then file a pleading challenging the validity of the petition on grounds that it is not supported by the concurrence of two evaluators under section 6601, subdivisions (d) through (f). In response, the petitioning authorities may defend the petition by asserting that one or more nonconcurring reports are infected by legal error." (*Ghilotti*, at pp. 912–913.)

Assuming, without actually deciding, that *Ghilotti* would also apply to the MDO petition at issue in this appeal, *Ghilotti* is distinguishable and therefore does not save the petition. As previously discussed, in his letter to the district attorney the medical director of ASH agreed with the staff conclusion that defendant was in remission, and stated that the Department was not recommending involuntary treatment. Unlike *Ghilotti*, the petition in this case did not allege legal error in the evaluators' conclusions regarding the statutory criteria for commitment nor did the district attorney file the petition at the behest of the Director in order to obtain judicial review of alleged legal error.

■ The language of sections 2968 and 2970 is clear and unambiguous and therefore clearly reflects the Legislature's intent. "If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs." (*People v. Snook* (1997) 16 Cal.4th 1210, 1215 [69 Cal.Rptr.2d 615, 947 P.2d 808].) Simply put, under the plain language of the statutory scheme, in this case and under its unique facts, the district attorney did not have authority to initiate a proceeding to commit

defendant to involuntary treatment as a mentally disordered offender. But even if he had such authority, the district attorney's showing in support of the petition for continued involuntary treatment was inadequate. Although the district attorney generally alleged in the petition that defendant suffered from a severe mental disorder that was not in remission, at trial the prosecutor presented evidence to show that defendant's severe mental disorder was pedophilia. Defendant argues that pedophilia is not a mental disorder, but we need not decide that issue because, even if it were, the Department had not diagnosed defendant with that mental disorder. Therefore, defendant had not been treated for pedophilia at ASH. As previously noted, the Department diagnosed defendant's severe mental disorder as schizoaffective disorder, depressive type, and defendant was treated for that disorder during the three years of his section 2962 commitment.

■ The mental disorder for which extended involuntary treatment is sought must be the same mental disorder for which defendant was treated as a condition of his parole. As we observed in *People v. Sheek*, the first step in requiring a prisoner to undergo involuntary treatment for a severe mental disorder is that the prisoner meet the six criteria set out in section 2962, one of which is that the prisoner " 'has been in treatment for the severe mental disorder for 90 days or more within the year prior to the prisoner's parole or release.' " (*People v. Sheek, supra*, 122 Cal.App.4th at p. 1611; § 2962, subd. (c).) Section 2962, subdivision (c) specifically refers to treatment of "the" mental disorder, not "a" mental disorder. Therefore, both the letter and spirit of the statute require the prosecutor to show that the defendant was treated for the same mental disorder for which the extended commitment is sought. (*Sheek*, at p. 1611.) The prosecutor did not do that in this case and instead presented evidence of an entirely new mental disorder and therefore a mental disorder for which defendant had never received treatment. Treatment for the severe mental disorder is a prerequisite for an order extending a prisoner's commitment under the MDO Act.

For each of the reasons stated, the judgment in this case must be reversed. Because the prosecutor did not have statutory authority to initiate commitment proceedings under section 2970, we not only will reverse the judgment but will direct the trial court to dismiss the commitment petition.

## DISPOSITION

The order entered October 7, 2003, committing defendant to the Department of Mental Health with placement at Atascadero State Hospital from May 24, 2003, through May 24, 2004, is reversed and the trial court is directed to dismiss the petition.

Richli, J., and Gaut, J., concurred.

A petition for a rehearing was denied April 5, 2005, and respondent's petition for review by the Supreme Court was denied June 15, 2005.