[No. C048996. Third Dist. Nov. 27, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
DARRELL KEITH MARCHMAN, Defendant and Appellant.

## COUNSEL

Paul Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Stan Cross and Julie A. Hokans, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BUTZ, J.**—Defendant Darrell Keith Marchman was committed for an additional year of involuntary mental health treatment under the Mentally Disordered Offender Act (hereafter MDO Act), Penal Code section 2960 et seq.[1] He appeals contending, inter alia, that the trial court erred in denying his motion to dismiss the recommitment petition. He asserts that, under the MDO Act, the district attorney has no authority to file a petition unless the medical director of the treating state hospital determines that the severe mental disorder is not in remission or cannot be kept in remission without treatment. This contention is meritorious and we shall reverse the judgment.

---

[1] Undesignated statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1989, when defendant was 19 years old, he pleaded guilty to two counts of lewd acts on a child under 14 years of age under section 288. He was sentenced to a determinate term of eight years in state prison.[2]

In January 1994, after completing his term of imprisonment, he was committed to Atascadero State Hospital as a condition of parole pursuant to section 2962.[3] In July of 1996 the medical director of the hospital determined that defendant met the criteria for continued involuntary treatment under section 2970 (fn. 5, *post*, at p. 85) and recommended that the district attorney file a petition for continued treatment under that statute. In August 1996 the district attorney filed the petition. In September defendant agreed to the one-year extension.

In June of 1997 the medical director of Patton State Hospital, to which defendant had been transferred, determined that he met the criteria for

---

[2] The trial court recommended defendant be placed in the custody of the California Youth Authority (now the Department of Corrections and Rehabilitation, Division of Juvenile Facilities) pursuant to Welfare and Institutions Code section 1731.5, subdivision (c).

[3] Section 2962, in pertinent part, is as follows:

"As a condition of parole, a prisoner who meets the following criteria shall be required to be treated by the State Department of Mental Health, and the State Department of Mental Health shall provide the necessary treatment:

"(a) The prisoner has a severe mental disorder that is not in remission or cannot be kept in remission without treatment. The term 'severe mental disorder' means an illness or disease or condition that substantially impairs the person's thought, perception of reality, emotional process, or judgment; or which grossly impairs behavior; or that demonstrates evidence of an acute brain syndrome for which prompt remission, in the absence of treatment, is unlikely.

"The term 'severe mental disorder' as used in this section does not include a personality or adjustment disorder, epilepsy, mental retardation or other developmental disabilities, or addiction to or abuse of intoxicating substances.

"The term 'remission' means a finding that the overt signs and symptoms of the severe mental disorder are controlled either by psychotropic medication or psychosocial support. A person 'cannot be kept in remission without treatment' if during the year prior to the question being before the Board of Prison Terms or a trial court, he or she has been in remission and he or she has been physically violent, except in self-defense, or he or she has made a serious threat of substantial physical harm upon the person of another so as to cause the target of the threat to reasonably fear for his or her safety or the safety of his or her immediate family, or he or she has intentionally caused property damage, or he or she has not voluntarily followed the treatment plan. In determining if a person has voluntarily followed the treatment plan, the standard shall be whether the person has acted as a reasonable person would in following the treatment plan.

"(b) The severe mental disorder was one of the causes of or was an aggravating factor in the commission of a crime for which the prisoner was sentenced to prison.

"(c) The prisoner has been in treatment for the severe mental disorder for 90 days or more within the year prior to the prisoner's parole or release."

continued involuntary treatment under section 2970 and recommended that the district attorney file a recommitment petition. In September 1997 the district attorney filed the petition. In October defendant agreed to the extension.

This pattern continued until May 2004. At that point, defendant had returned to Atascadero State Hospital. Psychiatrist Dr. David Fennell, acting with the endorsement of the medical director of the hospital, determined that defendant's mental disorder was in remission and could be kept in remission without treatment.

Dr. Fennell decided that, after more than 10 years of treatment, changes in defendant's medication had been extremely effective in getting him into remission of his manic symptoms. Defendant had shown steady improvement and was no longer showing overt signs or symptoms of his bipolar mental disorder. Dr. Fennell was of the view that defendant's other mental disorder, pedophilia, may have been activated by the hypersexuality of his mania, attributable to his bipolar illness. As a result of eliminating the mania, defendant's medications had reduced his sex drive. He was showing no overt signs of mental illness. In Dr. Fennell's opinion, defendant also met the statutory criteria for a finding that his disorder could be kept in remission.

Nevertheless, the deputy district attorney assigned to the matter concluded that he had independent authority under the MDO Act to file a petition for continued treatment. In June 2004, by an ex parte application, he persuaded a superior court judge to sign an order directing the State Department of Mental Health and the staff at Atascadero State Hospital to make defendant's mental health records available to Dr. Amy Phenix, a psychologist.

On July 23, 2004, the district attorney filed a petition for continued involuntary treatment of defendant pursuant to section 2970 et seq. The petition alleges that the district attorney has good cause to believe that defendant has a severe disorder that is not in remission, or cannot be kept in remission without treatment. It incorporates an "Evaluation Pursuant to [section] 2970" authored by Dr. Phenix.

A jury trial on the petition was scheduled for December 2004. Defendant made an in limine motion to bar trial testimony by Dr. Phenix. During the hearing defendant moved to dismiss the petition because Dr. Fennell, on behalf of the medical director, had determined that he did not meet the criteria for recommitment. The trial court denied the motion in limine and the oral motion to dismiss.

At defendant's seven-day trial in early 2005, Dr. Fennell, who at that point was acting medical director at Atascadero State Hospital, testified to his

evaluation of defendant's remission as related above. Dr. Phenix testified that while defendant's bipolar disorder was in remission, she did not believe that the pedophilia disorder was in remission. In her opinion, the nature of defendant's pedophilia is that it has a long and pervasive course. She believes that defendant requires further treatment with Depo-Provera to suppress his testosterone level. She is doubtful that if defendant were released he would manage his mental disorder appropriately, including taking his medications for his bipolar disorder. In her opinion defendant did not satisfy the statutory criteria for a finding that his disorder could be kept in remission because he unreasonably dropped out of a substance abuse treatment group.

The jury returned a verdict that defendant "suffers from a severe mental disorder that causes him to represent a substantial danger of physical harm to others." Thereafter, on February 7, 2005, the trial court issued an order of recommitment for an additional year.

## DISCUSSION

Defendant appeals contending, inter alia, that the trial court erred in denying his motion to dismiss the petition. Relying on *People v. Garcia* (2005) 127 Cal.App.4th 558 [25 Cal.Rptr.3d 660] (*Garcia*), he argues that under the MDO Act, the district attorney had no authority to file the petition for recommitment unless the medical director of Atascadero State Hospital determined that his severe mental disorder was not in remission or could not be kept in remission without treatment. The Attorney General replies that *Garcia* addresses only an initial commitment and such a determination is not necessary for the filing of a petition for recommitment.

In *Garcia* the defendant completed a 14-year term for kidnapping and molesting a child under the age of 14. He too was committed to Atascadero State Hospital as a condition of parole under section 2962. When the time came for his initial evaluation for continued involuntary treatment under the MDO Act, the hospital medical director informed the district attorney that he had determined that the defendant's severe mental disorder was in remission and could be kept in remission. Nonetheless, the district attorney filed a petition for involuntary commitment. The trial court denied the defendant's motion to dismiss and, after trial, the jury returned a verdict in favor of continued involuntary treatment. (*Garcia, supra,* 127 Cal.App.4th at pp. 562–563.)

The Court of Appeal reversed the judgment, stating: "[W]e hold that district attorneys are not independently empowered to initiate civil commitment proceedings under Penal Code section 2970, part of the Mentally Disordered Offender Act . . . . Instead, district attorneys may only initiate

such proceedings when the director of the facility or program providing the prisoner's treatment, or the Director of Corrections, states in a written evaluation in accordance with section 2970 that the prisoner's severe mental disorder is not in remission, or cannot be kept in remission without treatment." (*Garcia, supra,* 127 Cal.App.4th at p. 562, fn. omitted.)

The court reasoned as follows: "Because defendant's treatment occurred during the period of his parole, the hospital director, on behalf of the Department, should have notified the Board of Prison Terms that defendant's treatment had terminated because he was in remission and could be kept in remission. (§ 2968.)[4]" (*Garcia, supra,* 127 Cal.App.4th at p. 565.)

The *Garcia* opinion then seems to suggest, in obiter dictum, that the district attorney *would* have authority to file a petition for recommitment regardless of the opinion of the treating hospital's medical director. "The district attorney only has authority under the MDO statute to file a petition to extend a prisoner's commitment. Specifically, when a prisoner was treated during parole, the period of parole terminated without the prisoner being put into remission, and the prisoner was committed under section 2970 to involuntary treatment, then under section 2972, subdivision (e) the district attorney may file a petition for recommitment." (*Garcia, supra,* 127 Cal.App.4th at p. 565.) Actually faced with that question in this case, we conclude the answer suggested by the *Garcia* opinion is incorrect.

At the outset, we note the anomaly if *Garcia*'s dictum were correct. The hospital medical director's affirmative determination on remission would be final as to an initial petition but not as to subsequent petitions. We see no persuasive policy reason for such a distinction. (See, e.g., *Zachary v. Superior Court* (1997) 57 Cal.App.4th 1026, 1032, fn. 4 [67 Cal.Rptr.2d 532] (*Zachary*).)

We begin with the text of section 2970.[5] "In determining [legislative] intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible,

---

[4] "Although not specified in the statute, we assume that defendant would then have been released . . . since he had completed his term of imprisonment." (*Garcia, supra,* 127 Cal.App.4th at p. 565, fn. 3.)

[5] Section 2970 is as follows:

"Not later than 180 days prior to the termination of parole, or release from prison if the prisoner refused to agree to treatment as a condition of parole as required by Section 2962, unless good cause is shown for the reduction of that 180-day period, if the prisoner's severe mental disorder is not in remission or cannot be kept in remission without treatment, the medical director of the state hospital which is treating the parolee, or the community program director in charge of the parolee's outpatient program, or the Director of Corrections, shall submit to the district attorney of the county in which the parolee is receiving outpatient

to every word, phrase and sentence in pursuance of the legislative purpose." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387 [241 Cal.Rptr. 67, 743 P.2d 1323] (*Dyna-Med*).)

■ Section 2970 has a condition for the submission of the hospital medical director's evaluation of remission to the district attorney: "*if* the prisoner's severe mental disorder is not in remission or cannot be kept in remission without treatment." (Italics added.) The implication of this is that if the medical director determines the disorder is in remission and can be kept in remission without treatment, the director has no legal obligation to forward a written evaluation on remission to the district attorney. That is to say, only an evaluation unfavorable on the issues of remission is submitted to the district attorney.

Under the second paragraph of section 2970, the unfavorable written evaluation, in turn, is a prerequisite for the filing of a petition. If one is submitted: "The district attorney *may then* file a petition . . . ." (Italics added.) The implication of this is that if there is no unfavorable written evaluation, the petition may not be filed.

Under this reading of section 2970 the MDO Act parallels the statutory scheme that governs involuntary treatment of sexually violent predators (SVP's). (See, e.g., Welf. & Inst. Code, § 6601; *People v. Superior Court* (2002) 27 Cal.4th 888, 905–909 [119 Cal.Rptr.2d 1, 44 P.3d 949].) As required, it accounts for all of the language in section 2970 and harmonizes section 2970 with section 2968, as interpreted by *Garcia, supra,* 127 Cal.App.4th 558. (See, e.g., *Dyna-Med, supra,* 43 Cal.3d at pp. 1386–1387; *California Mfrs. Assn. v. Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836].)

The Attorney General's brief accepts that "section 2970 requires the initiation of civil commitment proceedings to be supported by a recommendation from the treating facility or Director of Corrections." The Attorney General's argument is that the requirement of section 2970 does not apply

---

treatment, or for those in prison or in a state mental hospital, the district attorney of the county of commitment, his or her written evaluation on remission. If requested by the district attorney, the written evaluation shall be accompanied by supporting affidavits.

"The district attorney may then file a petition with the superior court for continued involuntary treatment for one year. The petition shall be accompanied by affidavits specifying that treatment, while the prisoner was released from prison on parole, has been continuously provided by the State Department of Mental Health either in a state hospital or in an outpatient program. The petition shall also specify that the prisoner has a severe mental disorder, that the severe mental disorder is not in remission or cannot be kept in remission if the person's treatment is not continued, and that, by reason of his or her severe mental disorder, the prisoner represents a substantial danger of physical harm to others."

here because this is a petition for recommitment and, as such, it is governed by section 2972.[6] The Attorney General points to the last sentence in section 2972, subdivision (e): "The recommitment proceeding shall be conducted in accordance with the provisions of *this* section." (Italics added.) The Attorney

---

[6] Section 2972 is as follows:

"(a) The court shall conduct a hearing on the petition under Section 2970 for continued treatment. The court shall advise the person of his or her right to be represented by an attorney and of the right to a jury trial. The attorney for the person shall be given a copy of the petition, and any supporting documents. The hearing shall be a civil hearing, however, in order to reduce costs the rules of criminal discovery, as well as civil discovery, shall be applicable.

"The standard of proof under this section shall be proof beyond a reasonable doubt, and if the trial is by jury, the jury shall be unanimous in its verdict. The trial shall be by jury unless waived by both the person and the district attorney. The trial shall commence no later than 30 calendar days prior to the time the person would otherwise have been released, unless the time is waived by the person or unless good cause is shown.

"(b) The people shall be represented by the district attorney. If the person is indigent, the county public defender shall be appointed.

"(c) If the court or jury finds that the patient has a severe mental disorder, that the patient's severe mental disorder is not in remission or cannot be kept in remission without treatment, and that by reason of his or her severe mental disorder, the patient represents a substantial danger of physical harm to others, the court shall order the patient recommitted to the facility in which the patient was confined at the time the petition was filed, or recommitted to the outpatient program in which he or she was being treated at the time the petition was filed, or committed to the State Department of Mental Health if the person was in prison. The commitment shall be for a period of one year from the date of termination of parole or a previous commitment or the scheduled date of release from prison as specified in Section 2970. Time spent on outpatient status, except when placed in a locked facility at the direction of the outpatient supervisor, shall not count as actual custody and shall not be credited toward the person's maximum term of commitment or toward the person's term of extended commitment.

"(d) A person shall be released on outpatient status if the committing court finds that there is reasonable cause to believe that the committed person can be safely and effectively treated on an outpatient basis. Except as provided in this subdivision, the provisions of Title 15 (commencing with Section 1600) of Part 2, shall apply to persons placed on outpatient status pursuant to this paragraph. The standard for revocation under Section 1609 shall be that the person cannot be safely and effectively treated on an outpatient basis.

"(e) Prior to the termination of a commitment under this section, a petition for recommitment may be filed to determine whether the patient's severe mental disorder is not in remission or cannot be kept in remission without treatment, and whether by reason of his or her severe mental disorder, the patient represents a substantial danger of physical harm to others. The recommitment proceeding shall be conducted in accordance with the provisions of this section.

"(f) Any commitment under this article places an affirmative obligation on the treatment facility to provide treatment for the underlying causes of the person's mental disorder.

"(g) Except as provided in this subdivision, the person committed shall be considered to be an involuntary mental health patient and he or she shall be entitled to those rights set forth in Article 7 (commencing with Section 5325) of Chapter 2 of Part 1 of Division 5 of the Welfare and Institutions Code. Commencing January 1, 1986, the State Department of Mental Health may adopt regulations to modify those rights as is necessary in order to provide for the reasonable security of the inpatient facility in which the patient is being held. This subdivision and the regulations adopted pursuant thereto shall become operative on January 1, 1987, except that regulations may be adopted prior to that date."

General argues that, in view of this, filing a recommitment petition is not governed by any requirement of section 2970. We do not see this portion of section 2972, subdivision (e) as a sign that the Legislature intended procedural rules to differ for filing recommitment petitions and initial commitment petitions.

■ In ordinary statutory usage a proceeding is commenced by the filing of a petition or complaint. (See, e.g., Code Civ. Proc., § 350.) To say the proceeding is to be conducted in accordance with a certain provision does not, on its face, address the prerequisites for the proceeding. Prerequisites take effect before the proceeding is conducted at all. ■ Indeed, an initial commitment proceeding under Penal Code section 2970 is: "conducted in accordance with the provisions of [Penal Code Section 2972]." (Pen. Code, § 2972, subd. (e); see *Zachary, supra*, 57 Cal.App.4th at p. 1032, fn. 4.) That does not mean that the prerequisites for the filing of a petition in section 2970 are inapplicable.

The fact that additional commitment proceedings are addressed in a separately numbered statute does not mean that the procedures prescribed for the initial commitment are inapplicable. (Cf. *People v. Superior Court (Gary)* (2000) 85 Cal.App.4th 207, 213–218 [101 Cal.Rptr.2d 874]; *Peters v. Superior Court* (2000) 79 Cal.App.4th 845, 848–851 [94 Cal.Rptr.2d 350]; *Butler v. Superior Court* (2000) 78 Cal.App.4th 1171, 1178–1182 [93 Cal.Rptr.2d 468].) The ordinary implication is that the procedure prescribed by statute for the initial proceeding should apply to further proceedings of the same ilk. (See, e.g., Civ. Code, § 3511; *Zachary, supra*, 57 Cal.App.4th at p. 1032, fn. 4.)

The Attorney General's argument is that the phrase "in accordance with the provisions of this section" means not in accordance with section 2970. That is to say, it indicates a policy choice by the Legislature that the prepetition procedures prescribed in the adjacent section 2970 are not to be used in recommitment proceedings. This is belied by common sense and the history of the statutes.

This reading would leave the district attorney without the means to exercise discretion concerning whether to seek continued involuntary treatment. If section 2972 proscribes use of the procedures provided in section 2970, then the procedures for evaluation of remission, provision of a written evaluation to the district attorney and supporting affidavits, are also inapplicable.

The history of sections 2970 and 2972 also belies the notion that "in accordance with the provisions of this section" was meant to achieve the result urged by the Attorney General. In 1985 the substance of both provisions was enacted as one statute, in former section 2960. (Stats. 1985,

ch. 1419, § 1, pp. 5011–5017.) Subdivision (f)(1) of former section 2960 paralleled present section 2970. Subdivision (f)(6) of former section 2960 paralleled present section 2972, subdivision (e). Subdivision (f)(6), in pertinent part read: "The recommitment proceeding shall be conducted in accordance with the provisions of this *subdivision*." (Italics added.) Under the Attorney General's logic, that reference explicitly applied the provisions of present section 2970, as well as those of present section 2972, to recommitment proceedings.

In 1986 former section 2960 was broken up into the several numbered sections of the current MDO Act. (Stats. 1986, ch. 858, § 1, p. 2951.) Former sections 2970 and 2972 were enacted parallel to the present sections. The text of former section 2972, subdivision (e), in pertinent part, was changed to read as it does at present: "The recommitment proceeding shall be conducted in accordance with the provisions of this *section*." (Stats. 1986, ch. 858, § 7, pp. 2955, 2956, italics added.)

Thus, the question is: Was this change merely a clerical tidying of "subdivision" to "section" to avoid a facial, grammatical deviation on recodification? Or was it a choice to change the law to render the procedures in section 2970 inapplicable? The former option finds explicit support in the Legislative Counsel's Digest. It says existing law provides for continued treatment of MDO's and: "This bill would recodify those provisions [with exceptions not pertinent herein]." (Legis. Counsel's Dig., Sen. Bill No. 1845 (1985–1986 Reg. Sess.) 4 Stats. 1986, Summary Dig., p. 290.)

██ For all the foregoing reasons, we conclude that the district attorney may only initiate a recommitment proceeding when the director of the facility or program providing the prisoner's treatment states in a written evaluation in accordance with section 2970 that the prisoner's severe mental disorder is not in remission, or cannot be kept in remission without treatment.

That did not occur in this case. This renders the remaining contentions of trial error moot.

Because the district attorney did not have statutory authority to initiate commitment proceedings, we not only will reverse the judgment but will direct the trial court to dismiss the petition for commitment filed on July 23, 2004.

## DISPOSITION

The order entered February 7, 2005, committing defendant to the Department of Mental Health with placement at Atascadero State Hospital from

January 27, 2005, through January 27, 2006, is reversed and the trial court is directed to dismiss the petition for recommitment filed on July 23, 2004.

Nicholson, Acting P. J., and Robie, J., concurred.

On December 13, 2006, the opinion was modified to read as printed above.