[No. B197278. Second Dist., Div. Six. July 16, 2007.]

SALVATORE DAVID CUCCIA, Petitioner, v.
THE SUPERIOR COURT OF VENTURA COUNTY, Respondent, THE
PEOPLE, Real Party in Interest.

**COUNSEL**

Rudy Kraft, under appointment by the Court of Appeal, for Petitioner.

No appearance for Respondent.

Gregory D. Totten, District Attorney, and Michelle J. Contois, Deputy District Attorney, for Real Party in Interest.

**OPINION**

**YEGAN, J.**—The doctrine of stare decisis requires a trial court to follow an unambiguous published holding of the Court of Appeal, even if the trial court believes that the appellate opinion was erroneously decided. This, we had assumed, was fairly obvious to every trial court judge; that is, until now.

Salvatore David Cuccia (Petitioner) seeks a writ of mandate directing the respondent superior court to dismiss recommitment proceedings initiated by the district attorney pursuant to the Mentally Disordered Offender Act (MDO). (Pen. Code, § 2960 et seq.)[1] He contends the district attorney does not have statutory authority to initiate recommitment proceedings for his involuntary civil commitment unless the medical director of the treating state hospital determines that his severe mental disorder is not in remission or cannot be kept in remission without treatment. We agree with the holding of *People v. Marchman* (2006) 145 Cal.App.4th 79 [51 Cal.Rptr.3d 369] (*Marchman*) and grant his petition for a writ of mandate.

### *Factual and Procedural Background*[2]

In 1996, Petitioner pleaded guilty to false imprisonment by violence, and assault with a deadly weapon with the infliction of great bodily injury. (§§ 236, 245, subd. (a)(1), 12022.7.) According to the probation report, Petitioner struck his girlfriend in the face, beat her nude body with a padlock and chain wrapped in a towel, forced her into a bathtub filled with water, and beat her with a crowbar. Later, he bound her nude body with duct tape, forced her into a hole under the house, and filled the hole with water. The trial court sentenced him to six years in prison.

During his prison confinement, Petitioner received treatment for his mental illness. (§ 2684.) The Board of Prison Terms later determined that he was an MDO pursuant to the criteria of section 2962. As a condition of parole, it required him to accept treatment from the Department of Mental Health.

In 2002, the People filed a petition for recommitment pursuant to section 2970. The petition was supported by the reports of two staff psychologists at Patton State Hospital, Drs. Steven Jenkins and Robert Welsh. These doctors concluded that Petitioner was mildly symptomatic at the time, and hence not in remission, but could be safely and effectively monitored in an outpatient treatment program as long as his risk factors were carefully monitored. He was diagnosed at this time as suffering from schizophrenia, substance abuse, and an antisocial personality disorder. Dr. Jenkins did not find any evidence to support a diagnosis of sexual sadism, but added a diagnosis of "paraphilia

---

[1] All statutory references are to the Penal Code.

[2] We have taken judicial notice of our opinion in *People v. Cuccia* (Sept. 27, 2006, B184554) (nonpub. opn.) setting forth the procedural and factual background underlying Petitioner's initial MDO commitment.

not otherwise specified [NOS]." Dr. Welsh reported that the commitment offense did not involve a sexual charge and his last alleged sex offense was over 20 years old. The trial court sustained the petition and extended his commitment to June of 2003. Orders of recommitment were subsequently entered, extending his commitment to June 6, 2006.

On November 3, 2005, Dr. Sarla Gnanamuthu, the medical director at Patton State Hospital, sent a letter to the People indicating that petitioner's severe mental disorder was in remission. The letter was supported by a report dated October 12, 2005, and signed by a staff psychiatrist, Dr. Lawrence Ogbechic.

Dr. Ogbechic opined that Petitioner suffered from a severe mental disorder ("schizoaffective disorder, bipolar type"), but believed his severe mental illness was in remission. He reported that Petitioner was not currently exhibiting any symptoms of mental illness, such as hallucinations, delusions, or disordered thoughts. Nor did he believe that Petitioner represented a substantial danger of physical harm to others by reason of his mental illness. The doctor noted that Petitioner had not been observably violent since 1995. His victims involved women with whom he had sexual relations, including adults and adolescent females, but he had not demonstrated any positive symptoms of psychosis, he was medication compliant, and willfully participated in psychiatric treatment. He had received one-on-one therapy for assault on women, attended weekly anger management classes, had developed a wellness and recovery treatment plan, and was able to recognize "prodromal signs of a relapse." The doctor concluded that Petitioner could be safely and effectively treated on an outpatient basis. Dr. Ogbechic's report was approved by James Pollard, program director, and Dr. Gnanamuthu.

Notwithstanding the unanimous views of the treatment staff, and the medical director, in January of 2006, the People filed a petition to extend Petitioner's MDO treatment. The only evidence offered in "support" of the People's motion was the above-mentioned letter written by Dr. Sarla Gnanamuthu and the report of Dr. Ogbechic.

In April of 2006, Petitioner moved to dismiss the People's petition on the theory that the district attorney lacked authority to file a petition for recommitment because the director of the facility providing his treatment had not provided a written evaluation in accordance with section 2970 indicating that recommitment was appropriate. Petitioner also argued that even if the People

had authority to initiate the proceeding to continue his involuntary civil commitment, the People's factual showing in support of their petition was inadequate.

The People opposed Petitioner's motion, arguing that section 2972, subdivision (e) does not require approval of the Department of Mental Health in order to initiate a petition for recommitment. On May 3, 2006, the trial court denied Petitioner's motion.

On January 25, 2007, Petitioner renewed his motion to dismiss citing the recent decision in *Marchman, supra,* 145 Cal.App.4th 79, which held that a district attorney may not institute MDO recommitment proceedings unless the medical director of the state's treating facility indicated that the person is not in remission or cannot be kept in remission without treatment.

On February 20, 2007, the People opposed Petitioner's renewed motion, asserting that *Marchman* was wrongly decided.[3] The People further argued that Petitioner did not meet the statutory definition of remission and that Dr. Robert Beilin, community program director of the Conditional Release Program (CONREP), believed he was too dangerous for outpatient treatment. The People added that the *Marchman* decision "would force upon society the absurd result of Petitioner's release." The People noted that Petitioner could not be placed in an outpatient setting without the express agreement of the community program director, who refused to accept Petitioner into CONREP. Consequently, the People argued, if the department's view was controlling, Petitioner would have to be released to the community, with no transitional placement or supervision.[4]

The People attached Dr. Beilin's report, issued one year earlier in February of 2006, refusing to accept Petitioner in outpatient treatment. Dr. Beilin

---

[3] The prosecutor urged the trial court not to follow *Marchman:* "I think the *Marchman* court was all wet, frankly. And I know that sounds a bit brash to say it, but I've read the opinion and I don't think that they thoroughly analyzed the statute. In fact, they didn't even mention Section 2968. They didn't talk about Section 2974. I don't think they thoroughly analyzed the MDO Act. They didn't thoroughly analyze the SVP Act. And for them to say that conclusion harmonizes the MDO Act with the SVP Act, I think it's just dead wrong."

We do not deny that as an advocate for the People of the State of California, a prosecutor, at every level of the court system, may respectfully point out that the law, as declared by an appellate court, may be wrong. But it may not urge the trial court to not follow the law. It should make a record and preserve the issue for appeal. (See *Hawk v. Superior Court* (1974) 42 Cal.App.3d 108, 126 [116 Cal.Rptr. 713].)

[4] At this juncture, we need not, and do not, opine on whether the director of CONREP can refuse to accept Petitioner into the program.

explained that Petitioner refused to participate in sex offender treatment and could not, therefore, be kept in remission. He opined that Petitioner's refusal of sex offender treatment was the greatest risk factor for his future dangerousness. In his opinion, the diagnosis of sexual sadism was dropped by the treating staff without justification.

The People also submitted the September 2006 report of Dr. Beryl Davis who concluded that Petitioner's severe mental disorder was not in remission. Dr. Davis echoed Dr. Beilin's statements that Petitioner had refused treatment to address sexual offending. Noting that the commitment offense occurred when Petitioner was 57 years old and he is now 67, she stated that "[u]ntil he acknowledges his offense behavior and participates in treatment to address his rage and desire to inflict pain and humiliation on his victim, there is nothing to indicate that the behavior that he initiated that is descriptive of Sexual Sadism is in remission." The People concluded that the permissive language in section 2972, subdivision (e), i.e., "the district attorney *may* file a petition," gave the district attorney, rather than the medical director of the Department of Mental Health, the authority to determine whether to seek continued involuntary treatment for prisoners such as Petitioner whose parole periods have expired.

On February 22, 2007, the trial court denied Petitioner's renewed motion to dismiss, reasoning, in part, that *Marchman* was wrongly decided. The trial court said that appellate courts are not always right and it mentioned two examples: 1. The Florida Supreme Court ruled that President Bush had not won in the presidential election in the state of Florida but was wrong because the United Sates Supreme Court disagreed. 2. The California Supreme Court ruled that the determinate sentence law passed federal jury trial requirements but was wrong because the United States Supreme Court disagreed. While we do not think that the trial court was equating itself with the United States Supreme Court, the effect of its ruling can only be equated with overruling *Marchman, supra*, 145 Cal.App.4th 79.

## Stare Decisis

Petitioner contends, and the People belatedly concede, that the trial court was required to follow the decision in *Marchman* and grant his motion to dismiss. Pursuant to *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937], the decisions of every division of the District Court of Appeal are binding on all superior courts of this state. "Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction. It is not their function to attempt to

overrule decisions of the higher court." (*Ibid.*) Here the trial court exceeded its jurisdiction by refusing to follow *Marchman.*

What should a trial court do when confronted with a published Court of Appeal opinion which compels it to rule one way when it believes that the opinion is erroneous? First, it has no choice but to follow the declared law in the appellate opinion "wherever the facts of a case are not fairly distinguishable from the facts of the case in which [the appellate court has] declared the applicable principle of law." (*People v. Triggs* (1973) 8 Cal.3d 884, 891 [106 Cal.Rptr. 408, 506 P.2d 232].) It is simply not appropriate for the trial court to state its disagreement and rule contrary to the appellate opinion. Second, the trial court should make a record articulating why it believes the binding opinion is erroneous and should be revisited by the appellate court which is free to either disagree with or overrule the opinion. (See *Dabney v. Dabney* (2002) 104 Cal.App.4th 379, 384–387 [127 Cal.Rptr.2d 917], conc. opn. of Yegan, J., citing Witkin, Manual on Appellate Court Opinions (1977) pp. 168–169.) This is not a hollow "remedy" or waste of time and resources. A well-reasoned trial court analysis may shed light on a situation which may not have been appropriately considered by the extant appellate opinion. An appellate court should not be loathe to hear respectful and constructive criticism of one of its opinions. If we have learned anything from over 200 years of the common law in the United States, it is that the law is not static and is, in fact, ever changing. Disagreements at the Court of Appeal level are common and departures from precedent by the Supreme Court do happen. (See 9 Witkin, Cal. Procedure (4th ed. 1997) Governing Rules, § 957 et seq., p. 1002 et seq.)

## Marchman

In *Marchman,* the defendant was committed to Atascadero State Hospital as a condition of his parole pursuant to section 2962. Like Petitioner, his commitment was involuntarily continued after his parole period expired. After 10 years of treatment, the hospital staff concluded that Marchman's severe mental disorder was in remission. Nevertheless, the district attorney concluded that his office had independent authority pursuant to the MDO to file a petition for continued treatment. The Court of Appeal disagreed, holding that the district attorney may only initiate a recommitment proceeding when the director of the facility or program providing the prisoner's treatment states in a written evaluation in accordance with section 2970 that the prisoner's severe mental disorder is not in remission, or cannot be kept in remission without treatment. Because the hospital staff concluded otherwise, the Court of Appeal concluded that the district attorney did not have statutory authority to initiate recommitment proceedings. (*Marchman, supra,* 145

Cal.App.4th at p. 89.) The appellate court reversed the commitment order with instructions to dismiss the People's petition for recommitment. (*Id.* at pp. 89–90.)

The People continue to contend that *Marchman* is wrongly decided. They urge us to reject *Marchman.* Just because we have the power to do so doesn't mean that we should do so. The People ask us to hold that the district attorney has independent discretion to file a petition for recommitment, notwithstanding an adverse report of the medical director of the Department of Mental Health. The People also argue that we should allow them to present outside expert opinions showing that recommitment is appropriate.[5] They also argue that *Marchman* failed to harmonize its interpretation of section 2972 either internally, with the substance and spirit of the MDO, or externally, with the substance and spirit of other involuntary commitment acts.

█ In *Marchman,* the Court of Appeal reviewed the pertinent provisions of the MDO and the parallel statutory scheme governing involuntary treatment of sexually violent predators. (See, e.g., Welf. & Inst. Code, § 6601 et seq.; *Marchman, supra,* 145 Cal.App.4th at p. 86.) We agree with the *Marchman* analysis and holding that the district attorney may only initiate a recommitment proceeding when the director of the facility or program providing the prisoner's treatment states in a written evaluation in accordance with section 2970 that the prisoner's severe mental disorder is not in remission, or cannot be kept in remission without treatment. As in *Marchman,* that did not occur in this case. The district attorney did not, therefore, have statutory authority to initiate involuntary recommitment proceedings and the trial court erred in denying Petitioner's motion to dismiss.

█ Section 2972 sets forth no procedure for the district attorney to conduct its own investigation and utilize outside experts to refute expert opinions of the medical director of the treating facility and the staff psychologists. (Cf. Welf. & Inst. Code, § 6605, subd. (b) [trial court may consider documentation provided by the district attorney where the Department of Mental Health determines a person no longer meets the definition of a sexually violent predator].) The MDO requires the district attorney to accept the diagnosis and prognosis of the physicians at the treating facility and the medical director. The district attorney's recommitment petition asks the trial court (and this court) to second-guess the professional opinions of Petitioner's

---

[5] In support of its return, the People submit exhibit 13, a report written by Dr. Craig Lareau, a forensic psychology consultant. This report is dated May 16, 2007, nearly three months after the superior court denied Petitioner's renewed motion to dismiss. The report relies upon hearsay evidence allegedly contained in police reports that were not made available to Dr. Jenkins at the time of his evaluation of Petitioner. Because there is nothing in the record to show that the superior court considered this exhibit during its review of Petitioner's motion to dismiss, we will not consider it.

treatment team based on the opinions of outside experts. We decline the invitation because to do so would require us to rewrite the statute. Of course, the Legislature may expressly allow the relief which the district attorney seeks here. We express no opinion on whether it should do so.

We reject the People's contention that the trial court properly denied Petitioner's motion because the recommendation of the Department of Mental Health was "infected with legal error." (See, e.g., *People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 912 [119 Cal.Rptr.2d 1, 44 P.3d 949] [the requirement that SVPA evaluators apply statutory criteria invokes the inherent judicial power to determine whether an evaluator's recommendation stems from an inaccurate understanding of those criteria, and thus constitutes legal error].) The People argue that Petitioner's refusal to accept treatment for sexual sadism or "paraphilia NOS" renders him statutorily ineligible to be declared in remission under section 2962, subdivision (a).

Section 2962 requires that Petitioner voluntarily accept treatment for "the severe mental disorder" that forms the basis for his MDO commitment. (*People v. Garcia* (2005) 127 Cal.App.4th 558, 567 [25 Cal.Rptr.3d 660].) The severe mental disorder at issue here is Petitioner's schizoaffective disorder. The record demonstrates that he voluntarily accepted treatment for that disorder and the treatment was successful in keeping the disorder in remission. The fact that in the distant past Petitioner received a different diagnosis for paraphilia NOS is not an impediment to his release because the paraphilia diagnosis was not active in the year prior to June 2006. Moreover, the treating professionals at the Department of Mental Health found no evidence to support a diagnosis of sexual sadism. Sections 2970 and 2972 require the People to accept the diagnosis made by the Department of Mental Health, not competing diagnoses offered by outside experts retained by the district attorney.

*Conclusion*

The presumption is, our experience with MDO proceedings has shown, and we believe, that those mental health professionals who implement the MDO statutory scheme do so with honestly and integrity. Indeed, in the vast majority of cases where the Department of Mental Health says that an MDO recommitment petition should be filed, the People agree. They should not be permitted to do a statutorily unauthorized "end run" simply to achieve a result which they think is warranted.

Accordingly, a writ of mandate shall issue commanding the respondent superior court to set aside its order of February 22, 2007, denying Petitioner's motion to dismiss, and to issue a new order granting his motion to dismiss the recommitment petition. The alternative writ and stay of proceedings, having served their purposes, are discharged. This decision is final forthwith. (Cal. Rules of Court, rule 8.264(b)(3).)

Gilbert, P. J., and Coffee, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied September 25, 2007, S154825.