[No. F060971. Fifth Dist. Dec. 2, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL HERNANDEZ, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION[*]]**

---

[*]Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts C. and D. of the Discussion.

## COUNSEL

Paul Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans, Louis M. Vasquez, Leanne Le Mon and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**DETJEN, J.**—This is an appeal from an order for recommitment of a mentally disordered offender pursuant to Penal Code sections 2970 and 2972.[1] Appellant Daniel Hernandez contends the district attorney did not have statutory authority to file a petition under section 2970 for continued involuntary treatment because the medical director did not recommend recommitment and did not find him to be dangerous. We hold that the district attorney's statutory authority to file a petition under section 2970 is not conditioned on a finding by the medical director that the prisoner is dangerous or on a recommendation by the medical director for recommitment.

Appellant further asserts the petition was defective on its face, and the evidence was insufficient to support the jury's verdict on the petition. In the unpublished portion of this opinion, we reject these contentions.

Accordingly, we affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

Upon his release from prison in 2008, appellant was committed, as a condition of parole, as a mentally disordered offender (MDO). (See § 2962.) He was placed at Atascadero State Hospital. In February 2010, a forensic psychologist evaluated him. As a result of that evaluation, the medical director of Atascadero State Hospital submitted his "written evaluation on

---

[1] All further statutory references are to the Penal Code.

remission" (see § 2970) to the Fresno County District Attorney. The director did not recommend continued commitment for involuntary treatment. The evaluation included the conclusions that appellant did have a severe mental illness, was in remission, did not represent a substantial danger to others, but could not be kept in remission without treatment. The evaluation also stated that appellant had engaged in physical violence.[2]

Pursuant to section 2970, the district attorney filed a petition for continued involuntary treatment for one year. The petition specified that appellant had a severe mental disorder, that the severe mental disorder was controlled by medication and/or psychosocial support, but that it could not be kept in remission without treatment. The petition acknowledged that the hospital staff stated appellant was not a danger to others as a result of his severe mental disorder, but alleged: "The District Attorney, by the undersigned deputy, states that the statement, 'the patient cannot be kept in remission without treatment' contradicts the statement 'the patient does not represent a substantial danger of harm to others.' Therefore the District Attorney states that Daniel Hernandez does represent a risk of substantial harm to others." Appellant contested the petition and, after various continuances, jury trial began on September 3, 2010.

At the trial, the district attorney presented one witness, Dr. Joe DeBruin, the forensic psychologist who had conducted the recommitment evaluation of appellant. DeBruin testified that he had evaluated appellant on three occasions. The first was upon his initial commitment, the second was for an annual review, and the third was regarding recommitment. At the time of the annual review, appellant was still suffering symptoms from his mental disorder. Several months later, at the time of the recommitment evaluation, appellant was, as testified to by DeBruin, "very different than I had seen him in the past." He "was groomed appropriately. He was not delusional. He had normal thinking. He wasn't paranoid. He was not showing a lot of impaired thinking. His mood was maybe a little bit sullen, a little bit. His affect or his facial appearance was what we called a little flat, just kind of didn't have a lot of emotion to it. That is common, you know, as an ongoing symptom, so to speak, of people who have this kind of disorder. He was not reporting any symptoms. He was not reporting that he [was] hearing voices. When people are hearing voices, they are often mumbling and talking to themselves, kind of talking to their voices. He wasn't doing that. I did not see any evidence during my interview that this [was] a gentleman that [was] still having symptoms."

---

[2] Less than five months earlier, appellant had been involved in three incidents of mutual combat. Three months earlier, appellant had been involved in an incident during which he "lunged at a peer" and "later swung at" a staff member. As a result of that last incident, appellant had been placed in full-bed restraints.

DeBruin testified that his evaluation included a 40-minute interview with appellant, consultation with appellant's treating psychiatrist, and review of appellant's voluminous hospital record. He concluded appellant still suffered from a severe mental disorder, and likely would do so for the rest of his life. He further concluded, however, that the mental disorder was in remission because appellant was not exhibiting symptoms of the disorder, but that the symptoms would reappear if appellant stopped taking his medication. DeBruin acknowledged that appellant had a substantial history of violence and substance abuse, and that he had performed poorly on probation in the past. DeBruin also acknowledged that appellant had attended only 50 percent of his substance abuse classes in the months prior to preparation of the report, and that appellant had missed many other scheduled therapy sessions. DeBruin contended, however, that the more important question for him as an evaluator was whether a patient's treatment team was "pleased with how the patient [was] participating in treatment, et cetera," implying, though not expressly stating, that appellant's treatment team was satisfied with his participation in therapy groups.

DeBruin also testified that appellant was "a little ambivalent" about continuing his medication after his release from the hospital. "But he also was open to continue talking with staff. Sometimes patients go, I'm not going to take meds, I don't need meds, when I get out of here, I'm never taking meds. But this was a patient who was, again, a little ambivalent, a little bit mixed, but he was open. He was stating he was open. I asked him and he stated he was open to continue the conversation with staff on that, concerning that issue."

Appellant did not testify or present other evidence.

The jury found the petition true. The court recommitted appellant to the state hospital for a period of one year. Appellant appealed.[3]

## DISCUSSION

Section 2970 provides, in relevant part: "Not later than 180 days prior to the termination of parole, . . . if the prisoner's severe mental disorder is not in remission or cannot be kept in remission without treatment, the medical director of the state hospital which is treating the parolee, . . . shall submit to the district attorney . . . his or her written evaluation on remission. . . . [¶] The district attorney may then file a petition with the superior court for

---

[3] More than a year has passed since the recommitment order. We have been apprised by the parties that appellant subsequently stipulated to a further one-year recommitment. Because such stipulation by appellant may have been predicated on the pendency of this appeal, the appeal is not moot, even though the initial recommitment order has expired.

continued involuntary treatment for one year. . . . The petition shall . . . specify that the prisoner has a severe mental disorder, that the severe mental disorder is not in remission or cannot be kept in remission if the person's treatment is not continued, and that, by reason of his or her severe mental disorder, the prisoner represents a substantial danger of physical harm to others."

Appellant argues that since the state hospital did not find appellant to be dangerous and did not recommend recommitment, the district attorney did not have statutory authority to file the petition. He cites to three cases as authority for his position: *People v. Garcia* (2005) 127 Cal.App.4th 558 [25 Cal.Rptr.3d 660] (*Garcia*); *People v. Marchman* (2006) 145 Cal.App.4th 79 [51 Cal.Rptr.3d 369] (*Marchman*); and *Cuccia v. Superior Court* (2007) 153 Cal.App.4th 347 [62 Cal.Rptr.3d 796] (*Cuccia*). We disagree with appellant.

### A. Recommendation of Recommitment.

█ First, the express language of section 2970 makes it clear that continued involuntary treatment is not initiated by a recommendation for recommitment. It is initiated by the medical director determining the "prisoner's severe mental disorder is not in remission or cannot be kept in remission without treatment" and then submitting to the district attorney a "written evaluation on remission." (§ 2970.)

Second, not one of the cases cited by appellant stands for his assertion that the medical director must recommend that a petition be filed before the district attorney has the statutory authority to file one. Instead, *Garcia, Marchman*, and *Cuccia* state that the district attorney has no authority to file a petition under section 2970 unless the medical director determines that the severe mental disorder is not in remission or cannot be kept in remission without treatment. (See *Garcia, supra*, 127 Cal.App.4th at p. 562; *Marchman, supra*, 145 Cal.App.4th at p. 81; *Cuccia, supra*, 153 Cal.App.4th at p. 355.)

In *Garcia*, the medical director determined that the defendant's "severe mental disorder was in remission and could be kept in remission without treatment with the result that defendant did not pose a substantial danger of physical harm to others." (*Garcia, supra*, 127 Cal.App.4th at pp. 562–563.) The court concluded that the statutory scheme entrusted the remission determination to the medical director of the state hospital. When the defendant's mental disorder is in remission and can be kept in remission, the medical director must notify the Board of Parole Hearings, and the State Department of Mental Health must discontinue treating him. (§ 2968; see Gov. Code, § 12838.4 [changing name of Board of Prison Terms to Board of Parole Hearings].) The *Garcia* court concluded: "Simply put, under the plain

language of the statutory scheme, in this case and under its unique facts, the district attorney did not have authority to initiate a proceeding to [recommit] defendant to involuntary treatment as a mentally disordered offender." (*Garcia, supra,* 127 Cal.App.4th at pp. 566–567.)

In *Marchman,* the medical director "determined that defendant's mental disorder was in remission and could be kept in remission without treatment." (*Marchman, supra,* 145 Cal.App.4th at p. 83.) The court concluded that in those circumstances, the district attorney had no authority to file a recommitment petition. (*Id.* at p. 89.)

In *Cuccia,* the medical director wrote that the patient's severe mental disorder was in remission, the patient did not represent a substantial danger of physical harm to others by reason of his mental illness, and the patient could be safely and effectively treated on an outpatient basis. (*Cuccia, supra,* 153 Cal.App.4th at p. 351.) In his written evaluation, the director did not state that the patient's severe mental disorder was not in remission or could not be kept in remission without treatment. (*Id.* at p. 355.)[4]

In this case, unlike the situations in *Garcia, Marchman,* and *Cuccia,* the evaluation submitted by the medical director stated appellant could not be kept in remission without treatment. Additionally, the evaluation listed incidents in which appellant had engaged in physical violence within the prior five months. (See *People v. Burroughs, supra,* 131 Cal.App.4th at p. 1407.)

■ A recommendation for recommitment is not a prerequisite to the district attorney's authority to file a petition under section 2970.

### B. *Dangerousness.*

■ None of the three cited cases stand for appellant's assertion that a finding by the medical director of dangerousness is required before a section 2970 petition may be filed. Nor does section 2970 require the medical director to address the issue of dangerousness in his or her "written evaluation on remission." It only requires that the district attorney allege dangerousness in the recommitment petition. Appellant seems to suggest, however, that

---

[4] As stated in *People v. Burroughs* (2005) 131 Cal.App.4th 1401 [32 Cal.Rptr.3d 729], a patient " 'cannot be kept in remission without treatment' " under section 2962, subdivision (a) if, during the year prior to the question being before the trial court, the patient (1) commits a violent act except in self-defense, (2) makes a serious threat, (3) causes intentional property damage, or (4) fails to follow the treatment plan. (*People v. Burroughs, supra,* 131 Cal.App.4th at p. 1407.) Although the patient in *Cuccia* appears to have required continuing treatment, he was "in remission" for purposes of section 2970 because he had not had any incidents described in section 2962, subdivision (a) for more than a year prior to the hearing. (*Cuccia, supra,* 153 Cal.App.4th at p. 351.)

a requirement of a determination of dangerousness by the medical director is inherent in the statutory scheme, even though not expressly stated. We disagree.

It is true that upon the initial evaluation of a prisoner for a possible MDO commitment upon release on parole, section 2962, subdivision (d)(1), requires two mental health professionals to certify that, "*by reason of his or her severe mental disorder the prisoner represents a substantial danger of physical harm to others.*" (*Ibid.*, italics added.) That statute also requires them to certify: "that the prisoner has a severe mental disorder, that the disorder is not in remission, or cannot be kept in remission without treatment, that the severe mental disorder was one of the causes or was an aggravating factor in the prisoner's criminal behavior, [and] that the prisoner has been in treatment for the severe mental disorder for 90 days or more within the year prior to his or her parole release day." (*Ibid.*) Even in this initial evaluation, however, the dangerousness requirement is accorded different treatment from the other commitment factors. If the two initial evaluators "do not concur that (A) the prisoner has a severe mental disorder, (B) that the disorder is not in remission or cannot be kept in remission without treatment, or (C) that the severe mental disorder was a cause of, or aggravated, the prisoner's criminal behavior," there must be further evaluation. (*Id.*, subd. (d)(2).) Noticeably absent from this list is the issue of dangerousness. Thus, despite the fact that section 2962 requires an evaluation of dangerousness prior to the initial commencement of MDO proceedings, there is no statutory requirement that the professional evaluators agree that the prisoner is dangerous because of his or her mental disorder.

Nor is there support for appellant's position in section 2968. That section requires the medical director to discontinue treatment of a parolee if the director determines that the disorder is "in remission" and "can be kept in remission." (*Ibid.*) It does not empower the director to similarly terminate treatment upon a finding by the director that the patient is not dangerous.

Accordingly, we conclude that the statutory scheme does not commit to the professional expertise of the medical director the question of whether a prisoner, by reason of severe mental disorder, represents a substantial danger of physical harm to others; thus, the director's failure to find dangerousness does not have the same preclusive effect on the decision of the district attorney to file a recommitment petition as does the "remission" determination considered in *Garcia*, *Marchman*, and *Cuccia*.

■ We conclude the district attorney did have statutory authority to file the petition.

C., D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The September 24, 2010, order for continued treatment is affirmed.

Kane, Acting P. J., and Poochigian, J., concurred.

A petition for a rehearing was denied December 22, 2011, and appellant's petition for review by the Supreme Court was denied February 29, 2012, S199177.

---

*See footnote, *ante*, page 483.