[No. A132987. First Dist., Div. Five. May 15, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
FORREST KENDRID, Defendant and Appellant.

## Counsel

Paul M. Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan and Seth K. Schalit, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**JONES, P. J.**—Appellant Forrest Kendrid appeals from the trial court's order extending his commitment pursuant to Penal Code section 1026.5, subdivision (b), which governs the procedures for extending the commitment of persons found not guilty by reason of insanity (NGI).[1] Relying on a series of cases interpreting section 2970—part of the Mentally Disordered Offender Act—appellant contends the prosecutor "lacked statutory authority" to file the petition to extend his commitment because the hospital medical director did not recommend an extension. Appellant also claims substantial evidence does not support the court's determination that he represented a "substantial danger of physical harm to others." (§ 1026.5, subd. (b)(1).)

---

[1] Unless otherwise noted, all further statutory references are to the Penal Code.

We affirm. We conclude the medical director's recommendation against extending appellant's commitment did not preclude the district attorney from filing a petition under section 1026.5, subdivision (b). We also conclude substantial evidence supports the court's order extending appellant's commitment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1996, appellant spit in the face of a prison correctional officer and was charged with felony battery by a state prisoner on a noninmate (§ 4501.5). The trial court found appellant NGI, imposed a 10-year maximum sentence, and committed appellant to Atascadero State Hospital (hospital). In 2004, appellant was transferred to the Department of Corrections and Rehabilitation pursuant to Welfare and Institutions Code section 7301[2] because of "the danger [he] represent[ed] to the patients and staff" at the hospital. The court extended appellant's commitment in 2007 and 2009 pursuant to section 1026.5, subdivision (b). In September 2010, appellant was transferred back to the hospital. Appellant's commitment was to expire in June 2011.

In January 2011, the District Attorney of Solano County filed a petition to extend appellant's commitment pursuant to section 1026.5, subdivision (b). The petition alleged the hospital director "requested this Petition not be filed." The petition further alleged appellant "is an insane person who, by reason of mental disease, defect or disorder, represents a substantial danger of physical harm to others."

The petition attached an October 27, 2010 letter from hospital director Thomas G. Cahill, M.D., to the district attorney. In the letter, Dr. Cahill stated the hospital's "treatment team staff" evaluated appellant on October 22, 2010, and recommended not extending appellant's commitment pursuant to section 1026.5, subdivision (b). Dr. Cahill stated he agreed with the treatment staff's recommendation but noted, "[a]s prosecuting attorney, you have, of course, the option of seeking an extension without our recommendation." The petition also attached a report prepared by David K. Fennell, M.D., who evaluated appellant in October 2010 pursuant to section 1026.5.

---

[2] Welfare and Institutions Code section 7301 provides in relevant part, "Whenever, in the opinion of the Director of Mental Health and with the approval of the Director of Corrections, any person who has been committed to a state hospital pursuant to provisions of the Penal Code or who has been placed in a state hospital temporarily for observation pursuant to, or who has been committed to a state hospital . . . needs care and treatment under conditions of custodial security which can be better provided within the Department of Corrections, such person may be transferred for such purposes from an institution under the jurisdiction of the State Department of Mental Health to an institution under the jurisdiction of the Department of Corrections."

*Dr. Fennell's Report and the Hearing on the Petition*

In his 10-page report, Dr. Fennell recommended against extending appellant's commitment. Although Dr. Fennell concluded appellant has a "mental disease, defect or disorder" and presents a "substantial danger of physical harm to others," Dr. Fennell determined he "does not have serious difficulty controlling his dangerous behaviors."

Appellant waived his right to a jury trial and the court held a hearing on the petition. Dr. Fennell testified at the hearing. As he did in his report, Dr. Fennell stated appellant suffered from "antisocial personality disorder with psychopathic features and also borderline personality disorder." According to Dr. Fennell, appellant is "predatory" and is "in the severe psychopathic range." Dr. Fennell opined appellant (1) is a substantial danger to others; (2) has a callous disregard for the rights of others; and (3) is completely unable to empathize with others. According to Dr. Fennell, if appellant perceives his wishes are not being met, he acts in a violent or threatening manner. Dr. Fennell expressed his concern that appellant had "absolutely no insight into his behaviors that lead to violence and no appreciation for precursors. . . . He uses violence and intimidation to get what he wants and has no compunction with physically hurting others or violating the rights of others. [Appellant] does not see this as a problem, but instead externalizes the locus of responsibility onto others in his environment. . . ."

Dr. Fennell noted appellant's "history of repeated bouts of violence," specifically his (1) previous convictions for battery; (2) "numerous fights with other inmates"; (3) "numerous batteries upon staff" at the hospital in 2003 and 2004; and (4) "14 behavioral difficulties" between September and October 2010. He testified, however, that appellant "had manifested no behavioral difficulties" in the 18 months he spent in prison before being transferred to the hospital in September 2010. Dr. Fennell explained that appellant controlled his behavior in prison because it is a highly structured environment where appellant was punished immediately for bad behavior. Dr. Fennell attributed appellant's lack of disciplinary problems in prison to the security and structure of the prison setting.

Dr. Fennell described the medications appellant takes to stabilize his moods and to decrease his angry outbursts and noted appellant would "more likely than not stop [taking] his medications" if released into the community. Dr. Fennell explained, however, that appellant would not represent a greater risk of danger to others if he stopped taking his medication because he is "not delusional . . . not hallucinating [and] doesn't have thought disorganization.

These medications were prescribed primarily to slow him down a bit . . . to help with his angry outbursts. However, in the past when he's not been on these medications . . . there hasn't been a significant difference in his clinical behaviors."

According to Dr. Fennell, appellant would immediately commit another crime if released because "[h]e's highly criminal in his outlook . . . [and] becomes upset when his needs are not met instantly; and if another person doesn't do what he wants, he can become angry and threatening. So I think there's a high likelihood that he will commit a crime once he's released . . . ." When asked to reconcile his opinion that appellant would reoffend with his opinion that appellant can control his behavior, Dr. Fennell stated, "I have observed in statements that Mr. Kendrid has made and in his time in corrections when he put 18 months in of good time, when Mr. Kendrid knows there's a likelihood of being caught or if there are immediate consequences, such as a . . . correctional guard laying hands on him and stopping him from doing something, he can refrain. He's not driven by an irresistible impulse. . . . Mr. Kendrid buys [*sic*] his time. There were numerous statements he made while at [the hospital] at this last stay that indicated, for example, give me a PRN[3] or I'm going to have to go off. Get this person out of my face or I'm going to have to go off. Get me off this unit or you're going to be sorry. These types of statements indicate to me that his violence is instrumental, goal directed and reality based. Mr. Kendrid becomes angry when all of his needs are not met instantaneously."

When the prosecutor asked, "Isn't what you're really saying is that as long as Mr. Kendrid is in a highly structured environment, like prison, and taking his medications he's more apt to be able to control his behavior[?]," Dr. Fennell stated, "I would agree with all that except I don't think the medications are highly important in the case of Mr. Kendrid. They may be a minor help. I think the most important factor for Mr. Kendrid is to be in a highly structured environment in which there are instant consequences for acting out in a violent ma[nner]."

On cross-examination by appellant's attorney, Dr. Fennell reiterated his recommendation that appellant's commitment should not be extended. Dr. Fennell stated appellant is "dangerous" but has volitional control over his actions because he selects lower functioning patients as victims. As an example, Dr. Fennell noted appellant "went out of his way to . . . feed into" a psychotic schizophrenic patient's "paranoia to the point where the patient became agitated and fearful and needed to be restrained, and Mr. Kendrid was . . . laughing at the discomfort [of] the patient. When told to stop, he told the staff that he enjoyed watching the other patient suffer." Dr. Fennell also

---

[3] "PRN" appears to refer to appellant's use of an inhaler on an as-needed basis.

stated appellant anticipated his commitment would be extended but preferred to be released. Dr. Fennell also testified "it's very subjective whether the medications" appellant takes "are of any help or not" because they are "used primarily for the treatment of psychosis" and appellant "doesn't have any psychotic signs or symptoms."

On redirect examination, Dr. Fennell conceded the possibility appellant could have manipulated Dr. Fennell's evaluation given his familiarity with the mental health system, his tendency to manipulate people, and his "psychiatric vocabulary." Dr. Fennell noted, however, that he "usually ha[s] a strong sense . . . if a person is being manipulative about" the evaluation.

Following the hearing, the court granted the petition. It concluded appellant "represents a substantial danger, physical danger, to others given his antisocial personality disorder . . . under [section] 1026.5" and extended appellant's commitment until June 2013.

## DISCUSSION

██ "A person may be committed beyond the term prescribed by [section 1026.5,] subdivision (a) only . . . if the person has been committed under [s]ection 1026 for a felony and by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others." (§ 1026.5, subd. (b)(1).) This provision requires the People to prove the person "under commitment has serious difficulty in controlling dangerous behavior." (*People v. Galindo* (2006) 142 Cal.App.4th 531, 533 [48 Cal.Rptr.3d 241]; see *People v. Zapisek* (2007) 147 Cal.App.4th 1151, 1165 [54 Cal.Rptr.3d 873] (*Zapisek*); 5 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000 & 2011 supp.) Criminal Trial, § 693.)

Pursuant to section 1026.5, subdivision (b)(2), "[n]ot later than 180 days prior to the termination of the maximum term of commitment prescribed in subdivision (a), the medical director of a state hospital in which the person is being treated . . . shall submit to the prosecuting attorney his or her opinion as to whether or not the patient is a person described in paragraph (1). If requested by the prosecuting attorney, the opinion shall be accompanied by supporting evaluations and relevant hospital records. The prosecuting attorney may then file a petition for extended commitment in the superior court which issued the original commitment. . . . The petition shall state the reasons for the extended commitment, with accompanying affidavits specifying the factual basis for believing that the person meets each of the requirements set forth in paragraph (1)."

I.

*The Medical Director's Recommendation Against Extending
Appellant's Commitment Did Not Preclude the District
Attorney from Filing a Petition Under Section 1026.5,
Subdivision (b)*

As stated above, Drs. Cahill and Fennell recommended against extending appellant's commitment because Dr. Fennell determined appellant "does not have serious difficulty controlling his dangerous behaviors." Notwithstanding this recommendation, the prosecutor filed a petition to extend appellant's commitment pursuant to section 1026.5, subdivision (b). On appeal, appellant contends the prosecutor lacked authority to file the section 1026.5, subdivision (b) petition because "the hospital" did not recommend extending the commitment. We disagree. We conclude a prosecutor may file a petition for extended commitment under section 1026.5, subdivision (b) even where the medical director does not recommend an extension.

■ "We begin with the text of section [1026.5, subdivision (b)(2)]. 'In determining [legislative] intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose.' " (*People v. Marchman* (2006) 145 Cal.App.4th 79, 85–86 [51 Cal.Rptr.3d 369], fn. omitted (*Marchman*), quoting *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) Pursuant to section 1026.5, subdivision (b)(2), the medical or program director "shall submit to the prosecuting attorney his or her opinion as to *whether or not* the patient is a person described in paragraph (1)." (Italics added.) The statute continues, "If requested by the prosecuting attorney, the opinion shall be accompanied by supporting evaluations and relevant hospital records. The prosecuting attorney may then file a petition for extended commitment in the superior court which issued the original commitment." (*Ibid.*)

■ The plain language of section 1026.5, subdivision (b)(2) requires the medical director to submit an opinion to the district attorney on whether the defendant is "a person described in" section 1026.5, subdivision (b)(1) *or* whether the defendant is not "a person described in" section 1026.5, subdivision (b)(1). Nothing in section 1026.5, subdivision (b)(1) requires the medical director to recommend an extension before the prosecutor can file a petition under the statute, nor does it limit or preclude the prosecutor from filing a petition where the medical director recommends against an extension. Section 1026.5, subdivision (b)(2) simply requires the medical director to provide the district attorney with his or her opinion regarding the extension of the defendant's commitment.

Appellant cites no authority holding a medical director's recommendation for extended commitment is a prerequisite to the filing of a section 1026.5, subdivision (b) petition. Instead, appellant compares the procedure used to extend a commitment in section 1026.5, subdivision (b) to the procedure used to extend the commitment of a mentally disordered offender in section 2970.[4] Section 2970 provides in relevant part: "Not later than 180 days prior to the termination of parole, or release from prison if the prisoner refused to agree to treatment as a condition of parole as required by Section 2962, unless good cause is shown for the reduction of that 180-day period, if the prisoner's severe mental disorder is not in remission or cannot be kept in remission without treatment, the medical director of the state hospital which is treating the parolee, or the community program director in charge of the parolee's outpatient program, or the Director of Corrections, shall submit to the district attorney of the county in which the parolee is receiving outpatient treatment, or for those in prison or in a state mental hospital, the district attorney of the county of commitment, his or her written evaluation on remission. . . . [¶] The district attorney may then file a petition with the superior court for continued involuntary treatment for one year."

Appellant contends the language in section 2970 about the "requirements for filing a petition" is almost identical to the language in section 1026.5, subdivision (b). He relies on a trio of cases holding district attorneys are empowered to initiate commitment proceedings under section 2970 only if mental health officials have first determined "the prisoner's severe mental disorder is not in remission, or cannot be kept in remission without treatment." (*People v. Garcia* (2005) 127 Cal.App.4th 558, 562 [25 Cal.Rptr.3d 660] (*Garcia*); see *Marchman, supra*, 145 Cal.App.4th at p. 89; *Cuccia v. Superior Court* (2007) 153 Cal.App.4th 347, 356 [62 Cal.Rptr.3d 796] (*Cuccia*).)

In *Garcia*, the Fourth District Court of Appeal held district attorneys may initiate recommitment proceedings only "when the director of the facility or program providing the prisoner's treatment, or the Director of Corrections, states in a written evaluation in accordance with section 2970 that the prisoner's severe mental disorder is not in remission, or cannot be kept in remission without treatment." (*Garcia, supra*, 127 Cal.App.4th at p. 562.) The following year, the Third District Court of Appeal reached a similar result in *Marchman*, concluding a district attorney may initiate a recommitment proceeding pursuant to section 2970 only where there is " 'a written evaluation in accordance with section 2970 that the prisoner's severe mental

---

[4] "Section 2970 is apparently derived from statutes dealing with treatment of persons found not guilty by reason of insanity (§ 1026.5, subd. (b)) . . . ." (*People v. Kirkland* (1994) 24 Cal.App.4th 891, 905 [29 Cal.Rptr.2d 863].)

disorder is not in remission, or cannot be kept in remission without treatment.' " (*Marchman, supra,* 145 Cal.App.4th at p. 85, quoting *Garcia, supra,* 127 Cal.App.4th at p. 562.) And in 2007, in *Cuccia,* the Second District Court of Appeal followed *Marchman* and held the district attorney did not have the authority to initiate a recommitment proceeding where there was no written evaluation pursuant to section 2970. (*Cuccia, supra,* 153 Cal.App.4th at p. 355.)

In 2011, however, the Fifth District Court of Appeal reached a different conclusion in *People v. Hernandez* (2011) 201 Cal.App.4th 483 [133 Cal.Rptr.3d 817], and held "[a] recommendation for recommitment is not a prerequisite to the district attorney's authority to file a petition under section 2970." (*Id.* at p. 489, review den. Feb. 29, 2012; see 49 Cal.Jur.3d (2010) Penal and Correctional Institutions, § 316, pp. 405–408.)

We need not resolve the apparent split of authority between *Garcia, Marchman,* and *Cuccia* on the one hand and *Hernandez* on the other because those cases concern section 2970 and the language in that statute is different from the language in section 1026.5, subdivision (b)(2). Section 2970 requires the medical director to submit a written evaluation on remission "*if* the prisoner's severe mental disorder is not in remission or cannot be kept in remission without treatment . . . ." (Italics added.) Section 1026.5, subdivision (b)(2) contains no such predicate to the duty to submit a written evaluation. It always requires the medical director to submit an evaluation expressing an opinion as to whether or not the defendant falls within section 1026.5, subdivision (b)(1). Therefore, section 2970 has no application here, nor do *Garcia, Marchman,* and *Cuccia.*  .

Having reached this result, we need not address the People's contention that appellant forfeited this argument by failing to move to dismiss the petition in the trial court.

## II.

*Substantial Evidence Supports the Order Extending Appellant's Commitment Pursuant to Section 1026.5, Subdivision (b)*

Next, appellant contends substantial evidence does not support the court's order extending his commitment pursuant to section 1026.5, subdivi-

sion (b). " ' " 'Whether a defendant "by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others" under section 1026.5 is a question of fact to be resolved with the assistance of expert testimony.' [Citation.] 'In reviewing the sufficiency of evidence to support a section 1026.5 extension, we apply the test used to review a judgment of conviction; therefore, we review the entire record in the light most favorable to the extension order to determine whether any rational trier of fact could have found the requirements of section 1026.5(b)(1) beyond a reasonable doubt. [Citations.]' [Citation.]" [Citation.]' " (*Zapisek, supra*, 147 Cal.App.4th at p. 1165.)

Appellant claims there was insufficient evidence he had serious difficulty controlling his dangerous behavior because Dr. Fennell opined he has volitional control over his actions. Although Dr. Fennell did conclude appellant "does not have serious difficulty controlling his dangerous behaviors" he also determined appellant is "predatory," "in the severe psychopathic range" and that he has a callous disregard for the rights of others and is completely unable to empathize with others. Dr. Fennell determined appellant acts violently if he perceives his wishes are not being met and "becomes upset when his needs are not met instantly." In addition, Dr. Fennell explained appellant has "absolutely no insight into his behaviors that lead to violence." Dr. Fennell chronicled appellant's long history of violent behavior and noted he was transferred to the Department of Corrections and Rehabilitation pursuant to Welfare and Institutions Code section 7301 because he was dangerous to himself and to hospital staff. Dr. Fennell explained appellant was able to control his behavior in prison because it was a highly structured environment where he was punished immediately. He also stated appellant was likely to reoffend immediately if released. This suggests that while appellant's conduct may be volitional, he is not able to control his dangerous behavior in an unsupervised setting and his dangerous behavior will reoccur if he is released from a controlled environment.

■ The People are not required to prove the defendant " 'is *completely* unable to control his behavior.' " (*People v. Williams* (2003) 31 Cal.4th 757, 771 [3 Cal.Rptr.3d 684, 74 P.3d 779], quoting *Kansas v. Crane* (2002) 534 U.S. 407, 411 [151 L.Ed.2d 856, 122 S.Ct. 867] (*Crane*).) Instead, the defendant's "impairment need only be serious, not absolute." (*Williams*, at p. 773.) As the *Crane* court explained, "there may be 'considerable overlap between a . . . defective understanding or appreciation and . . . [an] ability to control . . . behavior.' [Citation.]" (*Crane*, at p. 415.) ■ Here, it is undisputed appellant had "absolutely no insight into his behaviors that lead to violence." Based on the foregoing, we conclude substantial evidence supports the court's order extending appellant's commitment.

## DISPOSITION

The trial court's order extending appellant's commitment pursuant to section 1026.5, subdivision (b) until June 26, 2013, is affirmed.

Simons, J., and Bruiniers, J., concurred.

A petition for a rehearing was denied June 1, 2012, and appellant's petition for review by the Supreme Court was denied August 15, 2012, S203313.