Filed 4/5/13  P. v. Fekadu CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D062855 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD109580) |
| BERIHU HADARA FEKADU, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Laura H. Parsky, Judge.  Affirmed.


Berihu Hadara Fekadu appeals from a decision granting a petition to extend his commitment as a person found not guilty by reason of insanity (NGI) for an additional two-year period (Pen. Code,[1] § 1026.5).  He contends there is not sufficient evidence to prove that because of his mental illness he remains a danger to others.  We will find the evidence sufficient to support the trial court's findings and therefore we will affirm.

---

[1]     All further statutory references are to the Penal Code unless otherwise specified.

FACTUAL AND PROCEDURAL BACKGROUND

In 1995 a jury found Fekadu NGI as to two counts of a forcible lewd act with a child (§ 288, subd. (b)) and three counts of felony assault (§ 245, subd. (a)(1)). The court found Fekadu had not recovered his sanity at that time and he was committed for treatment. In 1998 and 1999, Fekadu was on outpatient status for a short period of time. Otherwise, he has been confined since the original trial.

Fekadu waived his right to a jury and, following a court trial, the petition to extend his commitment was granted and he was committed until October 2014.

The parties are essentially in agreement as to the evidence presented at trial, although they differ in their analysis of that evidence. We find the appellant's summary of the facts accurately sets forth the evidence presented and thus we will include that statement here.

Dr. Stacey Berardino is a forensic psychologist who interviewed appellant in the San Diego County jail in July of 2012, and reviewed all his medical reports and records. The judge specified that none of those records were part of the body of trial evidence, except as specifically offered by counsel. The court admitted some weekly nursing progress reports, discussed below.

Dr. Berardino described the main commitment offenses, in which appellant sexually fondled some girls, ages 13 and 14, then followed them into a restaurant brandishing a knife. He left and returned, by which time the girls' mothers had hid with them behind a closed door in the restaurant, as he tried to get inside. There was also an incident at a bar in which he molested a woman, then fought with a bartender and gave

2

him a black eye. In the state hospital system in 1994 he fondled a minor patient on three separate occasions. In 1995 he hit and kicked a jail deputy. In March of 2011 he physically assaulted his psychiatrist at Napa Hospital, whom he considered to be "out to get him."

Dr. Berardino diagnosed appellant as having a severe mental disorder, paranoid schizophrenia, which is not in remission, and currently renders him a substantial physical danger to others. He had no incidents of violence or threats since the March 2011 incident, except that about three months before trial, he talked to a staff member about fighting, and asked if that person knew kung fu. He has hallucinations and delusions on at least a monthly basis, including fixed beliefs that he has special powers from God, and therefore has the right to do things, which are wrong for others. This included the assault on the deputy, and touching girls and women inappropriately.

Medication is basic to control of schizophrenia, and while appellant has not refused medication recently, the assessor opined that was because he had virtually no choice because he is under an involuntary medication order. He told Dr. Berardino he needs no medication because the spirit of God is inside him. Some of his medications are injected on a monthly basis. Appellant was on a conditional release program (CONREP) in 1998 and 1999. He committed no acts of violence during that time, but his parole was revoked because he was not taking his medications, and became irrational. Even with medication he can be delusional, paranoid, and violent, but medication reduces his acting out of his delusions.

3

Dr. Berardino found it noteworthy that appellant describes his "WRAP" (wellness recovery program) as a discussion of current events. His plan for maintaining mental health upon release is unrealistic. It consists of praying, returning to his home country of Ethiopia, and going to the university there. Appellant told the assessor his medication is torture, and part of a Nazi conspiracy. He refuses blood draws to check medication levels. He would not be likely to take medication if released outright, or even if conditionally released. There would be more stressors on appellant if he were released or in CONREP, and CONREP cannot administer involuntary medication orders.

Dr. Berardino agreed appellant was not currently violent, homicidal, or suicidal. He also agreed that his weekly nursing evaluations (from January through July of 2012) were positive, and reflected much progress in control of appellant's illness. Dr. Berardino stood by the opinion that appellant still required confinement, partly because he attributed the progress appellant showed, to the intramuscular injections of appellant's main medication, Zyprexa.

Psychiatrist Jaganath Glassman also reviewed appellant's medical files from Napa State Hospital, and interviewed him in the San Diego County Jail, in July of 2012. He described appellant's commitment offenses of sexual assaults and other physical assaults, as being caused by appellant's severe mental disorder. Appellant's paranoid schizophrenia impairs his perception of reality. He has grandiose delusions, including that he has special powers from God. Therefore he has the right to touch others in a sexual or assaultive manner, and he believes he can heal others with his touch.

4

Dr. Glassman found that appellant was not in remission, and that he did pose a substantial physical danger to others because he has a history of acting out violent and sexual impulses, and no control over his misbehaviors. This has been documented since he was first jailed on the original sex offenses, then committed assaults in the jail. While he had no incidents of violence at Napa for over a year before the trial in October of 2012, since he attacked his psychiatrist (in March of 2011), he had many incidents where he appeared to be on the edge of committing violent acts, or in Dr. Glassman's view issued threats. As Dr. Glassman interviewed appellant in the jail, he suddenly became enraged thinking the doctor was against him, and leaned forward, speaking rapidly and more loudly. Dr. Glassman noted he found this frightening, even though he knew appellant was behind bars and could not reach him. He terminated the interview, feeling appellant was too delusional to talk further.

Dr. Glassman disagreed that nurse's notes from January through July of 2012 reflected substantial improvement, in that while he had no aggressive or violent behavior, he was still actively psychotic and delusional. Dr. Glassman also emphasized appellant's history of fighting and challenging staff, and refusing blood work to check medication levels. He opined that appellant's condition would rapidly deteriorate, if he were outside of a structured setting. CONREP would not provide the necessary structure and support. Dr. Glassman agreed that appellant is quite bright, and of average or above average intelligence.

Appellant testified that he wanted CONREP again. He considered his illness healed because in his view reading the Bible can heal us, even of conditions such as

5

schizophrenia. He would not repeat his 1994 sexual offense. He did wish to become a leader in Ethiopia if he were completely discharged, but denied he said he wanted to be president there. He did not like Seroquel because it made his eyes weak, but he denied telling assessors he needed no medication. He has no delusions, and was not hearing voices. He would take medication as ordered.

## DISCUSSION

### *SUFFICIENCY OF THE EVIDENCE*

Fekadu contends the evidence is insufficient to prove, beyond a reasonable doubt, that his mental illness causes him to still be a danger to others. We believe a fair application of the appropriate standard demonstrates there is sufficient substantial evidence to support the trial court's decision.

### A. Standard of Review

When a defendant is found not guilty by reason of insanity, and confined to the state hospital, the commitment may be extended for two-year periods, if due to mental illness and the defendant continues to pose a substantial danger of physical harm to others. (§ 1026.5, subd. (b)(1); *People v. McKee* (2010) 47 Cal.4th 1172, 1207*; People v. Kendrid* (2012) 205 Cal.App.4th 1360, 1369-1370.)

When we review the decision of a trial court granting the prosecution's petition to extend a defendant's commitment under section 1026.5, we apply the familiar substantial evidence standard of review. Under that standard we review the entire record, drawing all reasonable inferences in favor of the trial court's decision. We do not make credibility decisions, nor do we weigh the evidence. Rather, we determine whether there is

6

sufficient substantial evidence in the record, from which a reasonable trial court could find the defendant remains a danger to others, beyond a reasonable doubt. (*People v. Zapisek* (2007) 147 Cal.App.4th 1151, 1165; *People v. Bowers* (2006) 145 Cal.App.4th 870, 879.)

## B. Legal Principles

In order to find a defendant continues to be dangerous, the evidence must demonstrate, beyond a reasonable doubt, that there is a serious impairment of volitional control of the person's behavior. (*People v. Williams* (2003) 31 Cal.4th 757, 773; *People v. Kendrid, supra*, 205 Cal.App.4th at p. 1370.)

Whether a person, by reason of mental illness, poses a substantial risk of physical harm to others can be established by expert opinion testimony. The testimony of one expert that the defendant meets the test of dangerousness is sufficient to support a trial court's finding. (*People v. Bowers, supra*, 145 Cal.App.4th at p. 879*; People v. Crosswhite* (2002) 101 Cal.App.4th 494, 507-508.)

## C. Analysis

In this case, two mental health professionals examined Fekadu, and reviewed his criminal and mental health history. Both agreed he continues to suffer from severe mental illness, that he lacks insight as to that illness, that he will likely stop taking medication if released, and that he continues to suffer delusions and aggressive and sometimes violent behavior. Both experts agreed that even under medication and in a controlled environment, Fekadu poses an unreasonable risk of physical harm to others.

7

The experts were aware of the crimes involved and the delusional system underlying those crimes. They agreed that Fekadu still suffers from the same illness and delusions. The experts cited to Fekadu's objection to medication and to acts of violence both in and out of mental health confinement. His last documented assault occurred in 2011 when he attacked his psychiatrist while in the state hospital.

Fekadu focuses on bits of testimony he deems beneficial and seeks to advance his own interpretation of some of the testimony. For example, he argues he has committed no physical violence since 2011. He notes that nurses notes from the county jail show appropriate behavior in the six months preceding trial. And, he interprets Dr. Glassman's comments about the interview where the doctor noted the agitation from Fekadu's delusions became so intense that the doctor ended the interview, as simply evidence that some people are frightened at the appearance and manner of a person with his mental illness.

As we have noted above, it is not our role to weigh the evidence. In the trial court there was unanimous expert opinion that Fekadu was a danger to others. Those opinions are well supported by the prior history, the interviews and the professional experience of the experts. Plainly the trial court credited their opinions and gave them great weight. Those opinions are more than adequate to support the trial court's decision.

DISPOSITION

The judgment is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

NARES, J.

IRION, J.

9