Filed 8/27/13  P. v. Avery CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ROBERT DERWIN AVERY,<br><br>        Defendant and Appellant. | A134992<br><br>(Lake County<br>Super. Ct. No. CR03320) |

Defendant Robert Derwin Avery was committed to the state mental hospital after being found not guilty of a felony battery charge by reason of insanity.  Penal Code section 1026.5 allows for such a commitment to be extended for two years when, in the language of subdivision (b)(1), a trier of fact determines that "the person . . . by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others."  A jury made that determination.  Defendant seeks reversal of the order extending his commitment on the ground there is not substantial evidence that (1) he lacked the volitional capacity to control his behavior, and (2) the risk of danger he posed if released was indeed "substantial."

We have addressed these issues before.  In *People v. Zapisek* (2007) 147 Cal.App.4th 1151, after holding that the People are required to prove that the person whose commitment they seek to extend "had a serious difficulty in controlling his potentially dangerous behavior,"  we stated "we can only affirm [the person's] commitment extension if we find substantial evidence that he had, at the very least, serious difficulty controlling his potentially dangerous behavior."  (*Id*. at pp. 1159, 1165.)

1

In *People v. Sudar* (2007) 158 Cal.App.4th 655, 662, we explained that "The requirement of serious difficulty in controlling dangerous behavior 'serves "to limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control." . . . .' "

Concerning a challenge to the sufficiency of the evidence on this point, we held in *Zapisek*: " ' " 'Whether a defendant "by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others" under section 1026.5 is a question of fact to be resolved with the assistance of expert testimony.' [Citation.] 'In reviewing the sufficiency of evidence to support a section 1026.5 extension, we apply the test used to review a judgment of conviction: therefore, we review the entire record in the light most favorable to the extension order to determine whether any rational trier of fact could have found the requirements of section 1026.5(b)(1) beyond a reasonable doubt. [Citation.]' [Citation.]" [Citation.] A single psychiatric opinion that an individual is dangerous because of a mental disorder constitutes substantial evidence to support an extention of the defendant's commitment under section 1026.5. [Citation.]' [Citation.]" (*People v. Zapisek*, *supra*, 147 Cal.App.4th 1151, 1165.) And our colleagues in Division Five have added this: "The People are not required to prove the defendant ' "is completely unable to control his behavior." ' [Citation.] Instead, the defendant's 'impairment need on only be serious, not absolute.' [Citation.] . . . '[T]here may be "considerable overlap between a . . . defective understanding or appreciation and . . . [an] ability to control . . . behavior." [Citation.]' [Citation.]" (*People v. Kendrid* (2012) 205 Cal.App.4th 1360, 1370.)

Only two witnesses testified at trial. One was defendant's wife, but she is not a mental health professional and provided nothing relevant to defendant's contentions. The other witness, the only one called by the People, was James Eyerman, M.D., a staff psychiatrist at Napa State Hospital. Having personally examined defendant, Dr. Eyerman was of the opinion that defendant "still poses a risk of danger to others due to his history of violence and mental illness." Defendant "has used a variety of drugs in the past,"

2

including methamphetamine, psychedelics, alcohol, marijuana, glue, paint, and "significant amounts of heroin."

Referring to the report of Dr. Daniel Blemen, another psychiatrist at Napa State, Dr. Eyerman testified that defendant "has had a number of violent episodes associated with drug use and . . . parole violations and returns to the hospital due to drug use." Specifically, defendant "has had a number of instances of being quite violent, shooting his father, Attacking his wife . . . threatening his second wife. And it appears that drugs were involved in each instance."

According to Dr. Eyerman, the factor of substance abuse was important because "past behavior is the best predictor of his future behavior" and defendant "was involved in contraband use [at Napa State] in July of 2011, and since he still misrepresents his drug use as being drug-free for the past ten years in spite of urine drug screen evidence that he was indeed abusing drugs in 2005 in the hospital." Thus, given that defendant's "mental illness may be related to substance abuse," as well as "his judgment with regard to his own drug use . . . is impaired," Dr. Eyerman concluded that "he is a high risk of relapse drug use at this time. And therefore [a] high risk of re-assaulting . . . while he's under the influence." And, although "there's a little bit of diagnostic confusion about exactly what psychotic disorder he [defendant] suffers from," Dr. Eyerman was definite that "there is an underlying psychopathology which is psychotic" that qualified as "a mental disease, defect, or disorder." Dr. Eyerman believed it "doubtful" that if released defendant could be relied upon to continue taking his antipsychotic medications.

Dr. Eyerman's opinion was that defendant "has a serious difficulty in controlling his dangerous behavior," cannot "conform to community . . . or [society] standards," and therefore "he is not safe to be released to the community."

In his report, which was received in evidence, Dr. Blemen reached the same ultimate conclusion. Dr. Blemen reports that defendant, who was 53-years-old at the time of trial, "has a long history of substance abuse dating back to his early teens."

Defendant's history of violence and even more extensive history of substance abuse are undisputed. Dr. Eyerman's testimony is alone sufficient to establish that

3

defendant may be unable to control his behavior, and, if released, would, in the statutory language, "by reason of a mental disease, defect, or disorder represent[] a substantial danger of physical harm to others." (Evid. Code, § 411; *People v. Zapisek* , *supra*, 147 Cal.App.4th 1151, 1165.) Together with Dr. Blemen's opinion to the same effect, and keeping in mind that mathematical certainty is not demanded, we conclude there is ample substantial evidence to sustain the jury's verdict. (*People v. Kendrid*, *supra*, 205 Cal.App.4th 1360, 1370; *People v. Zapisek* , *supra*, at pp. 1159, 1165.)

The order of commitment is affirmed.


_____
Richman, J.


We concur:


_____
Kline, P.J.


_____
Haerle, J.