Filed 11/9/21  P. v. Garcia CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>YADIRA GARCIA,<br><br>Defendant and Appellant. | F081650<br><br>(Super. Ct. No. MCR032569)<br><br>**OPINION** |

-ooOoo-

**THE COURT**[*]

APPEAL from an order of the Superior Court of Madera County.  Mitchell C. Rigby, Judge.

Conness A. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Paul E. O'Connor, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P. J., Detjen, J. and Smith, J.

Defendant Yadira Garcia was found not guilty by reason of insanity of battery of a nonconfined person while in prison in 2009.  Between 2009 and 2012 she was committed to the State Department of State Hospitals-Patton (Patton State Hospital); she was released to an outpatient program between 2012 and 2015; and in 2015 she was again committed to Patton State Hospital where her commitment was extended by the trial court for two years in 2016 and again in 2018.  In 2020, a jury found that defendant represented a substantial risk of physical harm to others as a result of her mental disease, defect, or disorder, and the trial court extended her commitment at Patton State Hospital for two years.  Defendant appeals that order, contending that the evidence presented at trial was insufficient to sustain the jury's verdict.  The People disagree.  We affirm.

## PROCEDURAL SUMMARY

On July 23, 2008, the Madera County District Attorney filed a complaint charging defendant with battery on a nonconfined person while confined in state prison (Pen. Code, § 4501.5;[1] count 1).

On January 7, 2009, defendant pled guilty and not guilty by reason of insanity. After entry of the pleas, the trial court took evidence and found defendant not guilty by reason of insanity.

On January 28, 2009, the trial court committed defendant to the custody of Patton State Hospital for treatment (§ 1026) for a term not to exceed four years.

On March 21, 2012, the trial court ordered that defendant be released to outpatient treatment through the Central California Conditional Release Program (CONREP).  Her release to CONREP was extended three times—on April 24, 2013, on March 26, 2014, and again on May 13, 2015.

On September 16, 2015, the trial court found that defendant violated the rules of CONREP.  The court further concluded that she continued to suffer from a mental

---

[1]     All further statutory references are to the Penal Code.

2.

disease, defect, or disorder that caused her to pose a substantial risk of harm to herself and the public and therefore committed her to Patton State Hospital. Her commitment was extended for two years pursuant to section 1026.5, subdivision (b), on May 11, 2016, and again on May 2, 2018.

On December 27, 2019, the People filed a petition pursuant to section 1026.5, subdivision (b), to extend defendant's commitment for two additional years. On July 16, 2020, a jury found that defendant posed a substantial risk of harm to others as a result of a mental disease, defect, or disorder. The jury further found not true that defendant no longer posed a substantial danger of physical harm to others because she was taking medicine that controlled her mental condition and that she would continue to take that medicine in an unsupervised environment. On the same date, the trial court extended defendant's commitment at Patton State Hospital for two years.

On August 27, 2020, defendant filed a notice of appeal.

## FACTUAL SUMMARY[2]

### Dr. Kerry Hannifin

Hannifin was a forensic psychologist at Patton State Hospital. Her job duties included diagnosis, treatment, and risk assessment of patients at Patton State Hospital. She prepared a section 1026.5 extension report recommending that defendant's commitment to Patton State Hospital be extended for two years. Before she prepared her report, she communicated with defendant's treatment team, and reviewed several months of defendant's treatment records, hospital records regarding any incidents defendant had been involved in, and emergency medication administrations. She further considered defendant's diagnosis, the reason for the diagnosis, defendant's understanding of her diagnosis and symptoms, her prescribed medication, defendant's feelings regarding her

---

[2]     The facts relevant to this appeal are those presented at the trial regarding the People's December 29, 2019 petition to extend defendant's commitment.

need for medication, her current treatments, defendant's understanding of and participation in her treatments, her history of violence over the past year, her understanding of her triggers, and her plan to cope with symptoms moving forward.

Hannifin understood that defendant was originally committed to Patton State Hospital because of a mental health episode while she was in prison. She opined that defendant continued to suffer from schizoaffective disorder, depressive type; and substance abuse disorder, including use of alcohol, opioids, and methamphetamine. Persons with schizoaffective disorder display symptoms that can include hallucinations and delusions. Persons with schizoaffective disorder, depressive type, also exhibit depression symptoms which might include sadness, withdrawn or isolative behavior, or flat affect, self-harm, suicidal tendencies, and lack of motivation. Defendant's hallucinations and delusions were "no longer … prominent symptom[s], meaning that they seem[ed] to be very well controlled with her medication …." However, defendant continued to display symptoms of depression, including flat affect, and withdrawn and isolative behavior. Defendant previously expressed to Hannifin that she had difficulty abstaining from substance abuse when not committed, which exacerbated her symptoms. She also previously described to Hannifin having previously suffered from depression, delusions, and auditory hallucinations. When suffering from those symptoms, defendant engaged in violent behavior.

Recently, defendant had been compliant with her prescribed medication, causing her hallucinations and delusions to stabilize; had not engaged in any acts of violence in the previous year; had not requested any emergency medication in the previous year; had attended 97 percent of her treatment groups; and had started work on a relapse prevention plan. However, based on her review of defendant's medical records and her examination of defendant, Hannifin concluded that defendant continued to exhibit symptoms of depression.

Hannifin concluded that defendant continued to pose a substantial risk of physical harm to others as a result of her mental disease, defect, or disorder. She posed a risk because she continued to exhibit symptoms of her psychiatric disorder, primarily depressive disorder, but she did "not fully recognize that she ha[d] those symptoms." Hannifin explained that long-term control of psychiatric symptoms required more than medication—it required defendant to have some insight into her condition. Defendant identified her diagnoses as schizophrenia and depression; symptoms as auditory hallucinations; triggers as loud noises, seeing people using drugs and alcohol, " 'old neighborhoods, [and] old friends' "; she identified her warning signs for decompensation as " 'not taking [her] med[ication], not eating and not sleeping' "; she identified her coping skills as listening to " 'music, drawing, talking to family or friends, crocheting, and anything crafty' "; she agreed that she needed to be on her medication because it stabilized her. However, when asked about her depressive symptoms, defendant stated that she last experienced symptoms six months ago. Although defendant had insight into her schizoaffective disorder and had made progress with respect to those symptoms, because of her complete lack of insight into her depressive symptoms, Hannifin opined defendant would be unable to recognize and cope with her symptoms in the community which would likely lead to her psychological decompensation or substance abuse. She opined that defendant required additional treatment for her depressive symptoms.

On cross-examination, Hannifin testified that defendant's uncontrolled depressive symptoms made her a danger to others. Whether defendant actively interacted with others at the hospital, whether defendant appeared to be withdrawn, and whether defendant had recently engaged in dangerous behavior were all relevant to her determination that defendant continued to have depressive symptoms. But even if defendant sometimes engaged with others, was not completely withdrawn, and had not recently exhibited dangerous behavior, it would not undermine Hannifin's conclusion that defendant exhibited depressive symptoms into which she had no insight.

5.

**Defendant**

Defendant acknowledged that she has schizoaffective disorder, depressive type. She testified that "[she] hear[d] voices, … sometimes [she] s[aw] things, and … [she had] depression." When she got depressed, she would "isolate [her]self[] and [did not] want to get out of bed." While defendant agreed with the diagnoses, she testified that she had not heard voices in five years, had not seen visual hallucinations in 11 years, and her depression was stable. The last time defendant had visual or auditory hallucinations she was taking her prescribed medication, but it was a different medication. Defendant testified that she was committed to Patton State Hospital when her CONREP release was revoked because of her drug use. She used drugs in that instance because she was involved in an unhealthy romantic relationship. Defendant's previous unhealthy relationships shared the common feature of having been with gang members. She decided that going forward she would only enter into relationships with "somebody more stable[;] somebody with a job[;] somebody more sophisticated." She recognized that any relationship would need to be with someone who would support her in being sober. In addition to the change in her romantic relationship goals, defendant also regularly talked to her family, participated in programs at the hospital, participated in the "work government," and went to her "groups" to help keep her stable. Defendant's family learned that she had a mental illness and had become very supportive. Her family knew the resources available to her and knew how important it was that she take her medication. Defendant believed that her family would support her if she was released from Patton State Hospital.

Defendant acknowledged that she previously had difficulty controlling her behavior. However, she stated that she could control her symptoms because she had acquired skills and tools to do so at the group sessions at Patton State Hospital. She had practiced the skills in her years at the hospital and she had decided that she was ready to go take care of her mother. Defendant was also prescribed medication for her

schizoaffective disorder and depression. She took the medication twice every day. She understood that she needed to take her medication twice every day for the rest of her life.

Defendant knew how to address her depression symptoms. When she felt herself starting to get depressed, she needed to force herself to get out of bed and seek out someone for help or talk to a family member. She also used her coping skills—listening to music, drawing, exercising, taking a walk, talking to staff, and helping in "work government." The last time defendant was engaged in any kind of violence was in 2016 when she got into a fight with another patient at the hospital. The last time defendant used illegal drugs was in 2017. Since then, she became involved in narcotics and alcohol treatment programs.

## DISCUSSION

The jury found that defendant's mental illness caused her to represent a substantial danger of physical harm to others. (See § 1026.5, subd. (b)(1).) The jury further found not true that defendant no longer posed a substantial danger of physical harm to others because she was taking medication that controlled her mental condition and that she would continue to take that medicine in an unsupervised environment. Defendant contends that the jury's findings were not supported by substantial evidence. The People disagree, as do we.

### 1. Legal Framework

In a proceeding pursuant to section 1026.5, if the People prove that a defendant, "by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others," the defendant will be recommitted for an additional period of two years from the date of termination of the previous commitment. (§ 1026.5, subd. (b)(1), (8).) Proof that a defendant "represents a substantial danger of physical harm to others" under section 1026.5, subdivision (b)(1) requires proof that the defendant has "had serious difficulty controlling his potentially dangerous behavior." (*People v. Zapisek* (2007) 147 Cal.App.4th 1151, 1159 (*Zapisek*); *People v. Bowers* (2006) 145

7.

Cal.App.4th 870, 878.) " ' " 'In reviewing the sufficiency of evidence to support a section 1026.5 extension, we apply the test used to review a judgment of conviction; therefore, we review the entire record in the light most favorable to the extension order to determine whether any rational trier of fact could have found the requirements of section 1026.5[, subdivision] (b)(1) beyond a reasonable doubt.' " ' " (*Zapisek*, at p. 1165.) We do not reweigh the evidence or reevaluate the credibility of witnesses. (*People v. Mohamed* (2011) 201 Cal.App.4th 515, 521.)

" ' " 'Whether a defendant "by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others" under section 1026.5 is a question of fact to be resolved with the assistance of expert testimony.' … [Citation.]" [Citation.] A single psychiatric opinion that an individual is dangerous because of a mental disorder constitutes substantial evidence to support an extension of the defendant's commitment under section 1026.5.' " (*Zapisek*, *supra*, 147 Cal.App.4th at p. 1165.) "However, 'expert medical opinion evidence that is based upon a " 'guess, surmise or conjecture, rather than relevant, probative facts, cannot constitute substantial evidence.' " ' " (*People v. Redus* (2020) 54 Cal.App.5th 998, 1011.)

## 2. Analysis

The parties are in agreement that the evidence supported the conclusion that defendant had a mental disorder. Defendant's argument is instead focused on whether the evidence was sufficient to show that she posed a "substantial danger of physical harm to others" (§ 1026.5, subd. (b)(1)) and had "a serious difficulty controlling [her] potentially dangerous behavior" (*Zapisek*, *supra*, 147 Cal.App.4th at p. 1159).

Defendant argues that no evidence was presented to show that her mental disorder caused her to have serious difficulty controlling her behavior. Instead, she contends that Hannifin "hypothesized that if [defendant] [was] depressed and her depressive symptoms were not controlled then that in-and-of-itself would make [her] a danger to the community." We disagree with defendant's characterization of the evidence.

8.

Hannifin testified that defendant's schizoaffective disorder, depressive type has a psychotic component and a mood component. Based on her review of defendant's medical records and her examination of defendant, defendant exhibited depressive symptoms (the mood component) but had a complete lack of insight into those symptoms. She explained that because of defendant's complete lack of insight into her depressive symptoms—which was required for long-term control of her symptoms—she would be unable to recognize and cope with her symptoms in the community which would likely lead to her psychological decompensation or substance abuse. When defendant's symptoms were uncontrolled in the past, she engaged in violent behavior. Indeed, defendant testified that she had difficulty in the past controlling her behavior. From that evidence, in the light most favorable to the jury's finding, a jury could reasonably have concluded that defendant, by reason of her mental disease, defect, or disorder, had serious difficulty controlling her dangerous behavior, and represented a substantial danger of physical harm to others; and that the danger was not controlled by medication.

We find defendant's arguments that Hannifin's conclusions were based on speculation or conjecture to be unpersuasive. Hannifin reviewed defendant's medical records and examined her, described defendant's depressive symptoms that put her at risk of decompensation or drug use, and explained that her lack of insight into those symptoms would prevent long-term control of her symptoms and behaviors. Hannifin's opinion of defendant's dangerousness as a result of her mental condition was a prediction based on her review of defendant's history and records, examination of defendant, and professional training and experience. That was sufficient to support the jury's finding. That Hannifin did not predict the exact mechanism by which defendant's decompensation and drug use might occur did not render her opinion speculative.

We also find defendant's argument that defendant's depressive symptoms were inadequate to render her unable to control her dangerous behavior to be unpersuasive.

9.

Defendant invites us to conclude that because defendant did not presently suffer from the psychotic portion of schizoaffective disorder, depressive type—only the mood portion—that she was not unable to control her symptoms or dangerous behavior. (Cf. *Zapisek*, *supra*, 147 Cal.App.4th at pp. 1165–1168 [evidence that defendant experienced psychotic symptoms and had assaultive behaviors was sufficient to support an extension pursuant to section 1026.5]; *People v. Bowers*, *supra*, 145 Cal.App.4th at p. 879 [same].) While demonstrating that a defendant suffers from psychotic symptoms like hallucinations and delusions that cause a defendant to be dangerous are one way to prove that extension of commitment is required pursuant to section 1026.5, it is not the only path. (See, e.g., *People v. Williams* (2015) 242 Cal.App.4th 861, 872–874; *People v. Kendrid* (2012) 205 Cal.App.4th 1360, 1364–1365, 1370.) Moreover, we are not permitted to discount or reweigh Hannifin's opinion that defendant's depressive symptoms and lack of insight into them posed a substantial risk of defendant's decompensation, drug use, and harm to others. (*Williams*, at p. 874; *People v. Mercer* (1999) 70 Cal.App.4th 463, 466–467.)

## DISPOSITION

The order is affirmed.