Filed 11/15/21  P. v. Alvarados CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MARCOS A. ALVARADOS,<br><br>Defendant and Appellant. | 2d Crim. No. B311609<br>(Super. Ct. No. F325854001)<br>(San Luis Obispo County) |

Marcos A. Alvarados appeals from the judgment extending his state hospital commitment pursuant to Penal Code section 1026.5.[1]  He contends the evidence was insufficient to support a finding necessary for the extension.  We affirm.

### FACTUAL AND PROCEDURAL HISTORY

In 2004, Alvarados was found not guilty by reason of insanity (NGI).  The trial court granted a petition for commitment (§ 1026, subd. (b)), and ordered Alvarados

---

[1] Further unspecified statutory references are to the Penal Code.

committed to the State Department of State Hospitals. His maximum term of commitment was set to expire in March 2021.

In November 2020, the prosecution petitioned to extend Alvarados's commitment. (§ 1026.5, subd. (b).) At the hearing, psychologist Dr. Nikkie Rodriguez opined that Alvarados suffered from schizophrenia. She based her opinions on Alvarados's hospital records, interdisciplinary notes, consultation with his treatment team, and an interview with him. She testified that Alvarados had a "long history of chronic mental illness" with hospital records dating back to 2002. He had previously received treatment for schizophrenia.

Dr. Rodriguez opined that Alvarados continued to represent a substantial danger of harm to others. She based her opinion on Alvarados's "documented history of violence" related to his psychiatric symptoms. She found him to "still be impaired by the symptoms . . . that were present at the time of the crime." Moreover, she stated that he presented several "risk factors" including his lack of a relapse prevention plan, his lack of insight into his mental illness or the need for treatment, and his "marginal participation" in treatment groups. She said that he needed to gain insight into his mental illness and to recognize "what some of his signs of decompensation are so that he may intervene and act appropriately, respond appropriately, so that he doesn't decompensate into a state that would lead him to become violent." She opined that he met the criteria for continued treatment pursuant to section 1026.5, subdivision (b).

The court granted the petition extending Alvarados's commitment for two years (§ 1026.5, subd. (b)(1)). The court noted that although Alvarados "does seem as though he's doing well in the hospital setting, . . . Dr. Rodriguez's testimony is that

2

he still had the symptoms when she interviewed him, and also those symptoms were the same as the symptoms that he experienced when he committed the last offense and perhaps the other offenses."  The court observed that Alvarados had "several 1026s in different cases."  The court also noted that Alvarados did not have a relapse plan and no insight into his mental illness.  Under these circumstances, the court found that he represented a substantial danger to others based on his disorder.

**DISCUSSION**

Alvarados contends the trial court erred in extending his commitment because the evidence was insufficient to show that he had serious difficulty controlling his behavior.  We disagree.

A person committed to a state hospital after being found NGI may be kept in custody no longer than the maximum term of imprisonment for the underlying offense.  (§ 1026.5, subd. (a)(1).)  An NGI commitment may be extended beyond this period in two-year increments when "by reason of a mental disease, defect, or disorder" the defendant "represents a substantial danger of physical harm to others."  (§ 1026.5, subd. (b)(1).)  The People must prove that as a result of the mental disease, defect or disorder, the defendant had, "at the very least, serious difficulty controlling his potentially dangerous behavior."  (*People v. Zapisek* (2007) 147 Cal.App.4th 1151, 1165 (*Zapisek*); see also *People v. Galindo* (2006) 142 Cal.App.4th 531, 537 (*Galindo*).)  A single psychiatric opinion that an individual is dangerous because of a mental disorder constitutes substantial evidence to support an extension of the defendant's commitment under section 1026.5.  (*Zapisek, supra,* 147 Cal.App.4th at p. 1165.)

3

We review the trial court's order extending an NGI commitment for substantial evidence. We review the record in the light most favorable to the extension order to determine whether any rational trier of fact could have found the requirements of section 1026.5, subd. (b)(1) beyond a reasonable doubt. (*Zapisek*, *supra*, 147 Cal.App.4th at p. 1165.)

Here, substantial evidence supports the finding that Alvarados had serious difficulty controlling his behavior as a result of his mental illness. Dr. Rodriguez testified that Alvarados has a history of violence related to his symptoms, and that he previously received treatment for those symptoms. Although Alvarados did not engage in violent conduct in the past two years in the hospital setting, he was still exhibiting the symptoms that were present at the time of his crime. Dr. Rodriguez also testified that there were other risk factors, including that he did not have a relapse prevention plan, he did not have insight into his mental illness or the need for treatment, and only "marginal[ly]" participated in treatment groups. The prosecution need only show that "the defendant's 'impairment [is] serious, not absolute.'" (*People v. Kendrid* (2012) 205 Cal.App.4th 1360, 1370 (*Kendrid*), citing to *People v. Williams* (2003) 31 Cal.4th 757, 773.) "'[T]here may be "considerable overlap between a . . . defective understanding or appreciation and . . . [an] ability to control . . . behavior." [Citation.]' [Citation.]" (*Kendrid*, at p. 1370.)

Under similar circumstances, in *People v. Williams* (2015) 242 Cal.App.4th 861, 875, the Court of Appeal upheld the order extending the defendant's commitment because substantial evidence supported a finding that the defendant had serious difficulty controlling his behavior. There the evidence showed

4

that the defendant had no relapse prevention plan and had a prior history of violence. (*Ibid.*) Although the defendant did not behave violently since his hospitalization, his prior violent behavior was connected to his substance abuse, which he was not able to engage in while hospitalized. Given his lack of a relapse prevention plan, the evidence showed there was a "strong possibility defendant would fail to control his behavior if released." (*Ibid.*)

Similarly, in *Kendrid, supra*, 205 Cal.App.4th at page 1370, the Court of Appeal upheld a commitment extension where the evidence showed that the defendant exhibited symptoms of predatory behavior, lacked insight into his behaviors that led to violence, and had a long history of violence. Although the defendant was able to control his behavior in a highly structured environment, the evidence suggested that he was "not able to control his dangerous behavior in an unsupervised setting and his dangerous behavior w[ould] reoccur if he [was] released from a controlled environment." (*Ibid.*)

Alvarados relies upon *Galindo, supra,* 142 Cal.App.4th 531, to argue that reversal is required because "there was *no* evidence that appellant lacked such control." *Galindo* is distinguishable. There, the trial court extended an NGI commitment of a defendant who was diagnosed with bipolar disorder without a finding (express or implied) that the defendant had serious difficulty controlling his behavior. Finding the error to be prejudicial, the court noted that there was "abundant evidence that defendant's behavior was dangerous and that he did not, in fact, control it. . . . [T]he fact he *did not* control his behavior does not prove that he *was unable to do so,* thus making him 'dangerous beyond [his] control.' [Citation.]" (*Id.* at p. 539.)

Remand was therefore necessary to allow the issue of control to be determined. (*Ibid.*)

Here, remand is unnecessary because substantial evidence supports a finding that Alvarados had serious difficulty controlling his behavior. The evidence showed that Alvarados exhibited the same symptoms as when he committed his last offense and that he had no relapse prevention plan or insight into his illness, without which there was risk that he would "decompensate into a state that would lead him to become violent."

## DISPOSITION

The judgment (order extending Alvarados's commitment) is affirmed.

NOT TO BE PUBLISHED.

TANGEMAN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

6

Barry T. LaBarbera, Judge

Superior Court County of San Luis Obispo

_____

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr. and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.